32 A.3d 625

**CITY OF ERIE, Appellee**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 2010.

Decided Nov. 23, 2011.

662

664

John B. Neurohr, Harrisburg, Warren R. Mowery Jr., for Pennsylvania Labor Relations Board.

Amy Louise Rosenberger, Willig Williams & Davidson, Philadelphia, for Appellant Amicus Curiae, Council 13, DC 83 through 90, AFSCME, AFL–CIO.

John R. Bielski, Willig Williams & Davidson, Philadelphia, for Appellant Amicus Curiae, International Association of Firefighters, Local 293, AFL–CIO.

Stephen C. Richman, Thomas Herman Kohn, Markowitz & Richman, Philadelphia, for Amicus Curiae, PA Professional Firefighters Assoc. & PA State Lodge, Frat. Order of Police.

Gregory Alan Karle, Erie, for City of Erie.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice TODD.

In this appeal by allowance, we consider, *inter alia*, whether a public employer committed an unfair labor practice when it unilaterally eliminated firefighter pension benefits, which were found to be legal, without first collectively bargaining with the firefighters' representative. The Collective Bargaining by Policemen and Firemen Act, commonly known as Act 111 ("Act 111"),[1] by its express terms, requires negotiation over the modification or elimination of pension benefits, and we find no applicable exception to this statutory mandate. Thus, for

1. Act of June 24, 1968, P.L. 237, No. 111, 43 P.S. §§ 217.1–217.9.

the reasons stated more fully below, we reverse the order of the Commonwealth Court.

The International Association of Firefighters, Local 293, AFL–CIO (the "Union") is the exclusive bargaining representative of a unit of firefighters and other personnel employed by the City of Erie (the "City"). While the City and the Union negotiated several previous collective bargaining agreements, the agreement at issue in this appeal was for the period from January 1, 2005 to December 31, 2007 (the "Agreement"). Article XI, Section 1 of the Agreement provided that the firefighters' pension fund "shall be governed in accordance with statutes of the Commonwealth of Pennsylvania and City of Erie ordinances or regulations now presently in effect and promulgated." Agreement at Article XI, Section 1.[2] This provision also included a mid-contract increase in the "line-of-duty" disability pension.

On May 9, 2002, an Act 111 interest arbitration panel[3] issued an award that required the City to provide a Deferred Retirement Option Plan ("DROP"). The DROP provided a mechanism by which retiring firefighters could elect to receive a lump-sum payout at retirement in exchange for a lower monthly pension benefit. Thereafter, the City filed a petition to vacate the DROP provision from the award. The City reasoned that the DROP provision would prove too costly because, for DROP participants, it would result in a

2. This provision states in full:
 The Firemen's Pension Fund shall be governed in accordance with the provisions of statutes of the Commonwealth of Pennsylvania and City of Erie ordinances or regulations now presently in effect and promulgated.
 **Effective January 1, 2006, the Firefighters' Pension Plan will be amended to increase the line-of-duty disability pension from 50% to 75%.**
 Article XI, Section 1 (emphasis original).

3. "Interest arbitration" is the dispute resolution process utilized when an employer and a union are unable to agree on the terms of a potential collective bargaining agreement. This can be contrasted with "grievance arbitration," which is the process employed when the parties disagree as to the proper interpretation of an existing collective bargaining agreement. *Twp. of Moon v. Police Officers of the Twp. of Moon*, 508 Pa. 495, 501 n. 5, 498 A.2d 1305, 1308 n. 5 (1985).

reduction in state aid to the firefighter pension under the Municipal Pension Plan Funding Standard and Recovery Act ("Act 205").[4] On March 28, 2003, the Erie County Court of Common Pleas granted the City's petition to vacate the DROP provision, and, on appeal, the Commonwealth Court affirmed the trial court's order. *City of Erie v. Int'l Ass'n of Firefighters Local 293*, 836 A.2d 1047 (Pa.Cmwlth.2003).

Prior to ratification of the Agreement, on May 15, 2004, the City enacted an amendment to Article 149.09 of the City's ordinances to provide a Partial Lump Sum Distribution Option ("PLSDO") pension benefit. While not a DROP, the PLSDO provided a similar benefit, in that it permitted firefighters to receive a lump sum payment for a reduced monthly pension benefit.[5] Unlike the DROP, however, the PLSDO was structured so that the City would not forfeit state funding for PLSDO participants. The Auditor General, however, on November 27, 2006, issued a finding in conjunction with an audit of the City's pension funds criticizing and describing as illegal certain aspects of the PLSDO that pertained to the City's election of state aid for PLSDO participants.

In response to the Auditor General's finding, on December 20, 2006, the City modified the existing firefighter's pension

4. Act of December 18, 1984, P.L. 1005, No. 205, §§ 101–803 (as amended, 53 P.S. §§ 895.101–895.803). Act 205, *inter alia*, established a General Municipal Pension System State Aid Program which provided funds that municipalities could use to supplement their pension plans.

5. Specifically, the PLSDO allowed firefighters who had reached certain age and length of service requirements to select a "pension look-back date" which preceded their actual termination date by 12, 24, or 36 months. For purposes of pension calculations, the pension look-back date would be used as the effective date for the participant's retirement benefits. While the participant would continue to work for the City, he or she would no longer accrue seniority or service credit, and was required to continue contributing to his or her pension plans between the pension look-back date and the date of employment termination. Following the participant's termination of employment, he or she would receive his or her normal retirement benefits which would be determined based on the pension look-back date, as well as a lump sum cash distribution equal to the participant's monthly retirement benefit, multiplied by the number of months elected in the PLSDO. *City of Erie v. Dept. of Auditor General*, 961 A.2d 234, 235 (Pa.Cmwlth.2008), *petition for allowance of appeal denied*, 603 Pa. 705, 983 A.2d 1250 (2009).

plan by enacting Ordinance 75–2006, which repealed in its entirety the PLSDO benefit contained in Article 149.09. The City did not bargain with the Union over its elimination of the PLSDO from the firefighters' pension plan, taking the position it was not required to do so.

▇ Thereafter, on January 5, 2007, the Union filed a charge of unfair labor practices with the Pennsylvania Labor Relations Board (the "Board" or the "PLRB"), in which it alleged, as discussed more fully below, that the City's unilateral elimination of the PLSDO violated the City's duty to collectively bargain, as mandated by Section 6(1)(a), (c), and (e) of the Pennsylvania Labor Relations Act ("PLRA"),[6] see 43 P.S. § 211.6(1)(a), (c), and (e), and Act 111.[7] On March 9, 2007, the Secretary of the Board issued a Complaint and Notice of Hearing. In lieu of a hearing, the parties agreed to submit a Joint Stipulation of Facts, along with briefs.

Hearing Examiner Thomas Leonard issued a Proposed Decision and Order on January 4, 2008, in which he concluded that pensions are a mandatory subject of bargaining under Act 111, and the City's unilateral elimination of the PLSDO violated the City's statutory duty to bargain with the Union in violation of Section 6(1)(a) and (e) of the PLRA.[8] The Hearing Examiner ordered, inter alia, that the City rescind the repeal of the PLSDO ordinance and cease and desist from refusing to collectively bargain with the Union. The City filed exceptions on January 22, 2008. On March 18, 2008, the Board issued a Final Order which dismissed the exceptions and affirmed the Proposed Decision and Order. Thereafter, the City filed a Petition for Review with the Commonwealth Court.

6. Act of June 1, 1937, P.L. 1168, No. 294 (as amended, 43 P.S. §§ 211.1–211.3). Section 6(1)(a) involves interfering with employees rights under the labor laws; Section 6(1)(c) concerns discrimination with respect to terms or conditions of employment; and Section 6(1)(e) speaks to a refusal to bargain with an employee representative.

7. The PLRA and Act 111 are to be read in pari materia. Gehring v. PLRB, 591 Pa. 574, 580 n. 7, 920 A.2d 181, 185 n. 7 (2007); Philadelphia Fire Officers Ass'n v. PLRB, 470 Pa. 550, 369 A.2d 259 (1977).

8. The Hearing Examiner found the City did not violate Section 6(1)(c).

On appeal, a three-judge panel of the Commonwealth Court reversed the Board's order denying the City's exceptions. In doing so, the court found that, although Act 111 mandated bargaining over pension benefits, the City did not violate its bargaining obligations by unilaterally rescinding the PLSDO for the firefighters because the Agreement was not sufficiently clear as to the intention of the parties regarding this benefit. *City of Erie v. PLRB,* 652 C.D.2008 (Pa.Cmwlth. filed March 5, 2009).[9]

Specifically, in an unpublished opinion authored by Judge Mary Hannah Leavitt, the court initially considered the issue of whether the PLSDO was incorporated into the Agreement. The court examined the terms of the Agreement and concluded that the language in Article XI, Section 1—that the pension fund "shall be governed" in accordance with state statutes and the City's ordinances—was general and unclear as to whether the PLSDO was a part of the Agreement. Further, the court noted that the negotiated substantive improvement to the pension plan contained in the Agreement—that "the Firefighters' Pension Plan will be amended to increase the line-of-duty disability pension from 50% to 75%"—was presented in bold. This was not done so for the PLSDO. According to the court, it was inconsistent and illogical that the parties did not pursue a similar drafting style for the PLSDO had it been a negotiated improvement to the pension plan under the Agreement. Second, the court found informative that Article XI, Section 1 was a carryover sentence that appeared in a prior collective bargaining agreement. Section 5 of the Agreement was reserved for a DROP, but was left blank. The Commonwealth Court opined that, if the parties had negotiated for the PLSDO, "they should have included it in Article XI, Section 5; or in Article I, Section 1 in bold; or in both places in the

9. At the time of its decision, there existed a vacancy among the commissioned judges of the Commonwealth Court. While the three-judge panel that initially heard the case voted to reverse, pursuant to the court's opinion circulation rules, all commissioned judges considered and voted on the opinion, resulting in a tie. Therefore, the opinion of the three-judge panel was filed pursuant to Section 256(b) of the Internal Operating Procedures of the Commonwealth Court. 210 Pa.Code § 67.29(b).

[Agreement]." *City of Erie v. PLRB,* at 12. Moreover, the court pointed out that the stipulation of facts was silent over whether the parties bargained over the PLSDO.

Having found the PLSDO was not incorporated into the Agreement, the court determined that an exception to the general duty to bargain expressed in its prior decision in *Plainfield Twp. Policemen's Ass'n v. PLRB,* 695 A.2d 984 (Pa.Cmwlth.1997), was controlling. As discussed in greater detail below, in *Plainfield Twp.,* the Commonwealth Court held an employer did not engage in an unfair labor practice by failing to bargain over an elimination of a pre-contract ordinance providing a pension benefit that was found to be illegal. The court opined that the elimination of the benefit did not constitute an unfair labor practice because the parties had not specifically addressed the subject of pensions in their negotiations, and their collective bargaining agreement made no mention of the benefit, and, thus, the employer gained no bargaining advantage by eliminating the benefit. While recognizing the Agreement in the matter *sub judice* was not silent regarding pension benefits, the Commonwealth Court herein nevertheless reasoned that, based upon the language in the Agreement and the silence of the parties regarding any explicit negotiations, the matter was governed by *Plainfield Twp.,* and the City was free to unilaterally repeal the pension benefits accorded by Article 149.09 without bargaining with the Union. Important to the Commonwealth Court's determination was the illegality of the benefit: "Absent evidence that the illegal pension benefit in the ordinance was actually negotiated and then specifically incorporated into the [collective bargaining agreement], the municipality may rescind the ordinance without negotiating with the Union. Without evidence that the terms of the illegal benefit in the ordinance was negotiated, the municipality cannot be said to have gained a benefit from the inclusion of an illegal provision into a [collective bargaining agreement]." *City of Erie v. PLRB,* at 11. Accordingly, the Commonwealth Court held the Board erred in dismissing the City's exceptions and reversed the Board's order.

The Board sought this Court's discretionary review, which was granted on July 7, 2010.[10] *City of Erie v. PLRB,* 606 Pa. 291, 997 A.2d 1150 (2010) (order). In our order, we stated the issue as phrased by the Board and requested additional advocacy:

Must a public employer bargain over elimination of a pension benefit that was not found to be illegal by a court of law?

The parties are further directed to address issues regarding the proper manner of interpreting a collective bargaining agreement; specifically, whether the decision of the Commonwealth Court comports with or diverges from principles of contract interpretation and the collective bargaining process guaranteed by Act 111.

*Id.*

 As a threshold matter, we set forth our proper standard and scope of review. Generally, when reviewing a decision of the Board, our Court's review is limited to determining whether there has been a violation of constitutional rights, an error of law, procedural irregularity, or whether its findings are supported by substantial evidence. 2 Pa.C.S.A. § 704; *FOP and Conf. of Liquor Control Bd. Lodges v. PLRB,* 557 Pa. 586, 592, 735 A.2d 96, 99 (1999). Furthermore, a decision of the Board must be upheld if the Board's factual findings are supported by substantial evidence, and if its conclusions of law drawn from those facts are reasonable, and not capricious, arbitrary, or illegal. *Joint Bargaining Committee of Pennsylvania Soc. Serv. Union v. PLRB,* 503 Pa. 236, 241, 469 A.2d 150, 152 (1983). Moreover, the Board's interpretation of its governing statute is to be given controlling weight unless clearly erroneous. *Whitaker Borough v. PLRB,* 556 Pa. 559, 562, 729 A.2d 1109, 1110 (1999). Our scope of review is plenary in that we can consider the entire record.

10. We have jurisdiction over this appeal pursuant to 42 Pa.C.S.A. § 724(a).

The Board's primary contention is that Act 111, by its express terms, mandates bargaining between an employer and a union over pensions and other benefits. 43 P.S. § 217.1. The Board maintains that the Commonwealth Court acted in contravention of this statutory language when it found that the City had no duty to bargain over the elimination of the existing PLSDO benefit because such benefit was not expressly set forth in the collective bargaining agreement. According to the Board, bargaining obligations under Act 111 are not conditioned upon whether a particular matter was previously negotiated, but, rather, on whether any changes to wages, hours, or working conditions must be negotiated, regardless of whether the matter is addressed in a collective bargaining agreement.

The Board also posits that the Commonwealth Court erred by relying on its decision in *Plainfield Twp.* The Board offers that, in *Plainfield Twp.*, the Commonwealth Court was faced with a police pension ordinance that was illegal under relevant law. The Board in that case applied a limited exception to the requirement of collectively bargaining over pension benefits, finding that the employer did not violate its bargaining obligation when it unilaterally brought specific pension benefits into conformity with the law, where the benefits pre-dated the collective bargaining agreement, the benefits were not mentioned in the collective bargaining agreement, and no employees utilized the benefits in questions. The Board differentiates *Plainfield Twp.* from the matter before us, asserting that, in *Plainfield Twp.*, a specific employee pension benefit, and not the employer's funding mechanism, was found to be unlawful and contrary to Act 205. Here, according to the Board, there is no claim that the PLSDO benefit itself was unlawful. Second, in *Plainfield Twp.*, the benefit at issue had not been previously applied to employees, whereas in the matter *sub judice,* certain firefighters took advantage of and received the PLSDO benefit both before and after the Agreement was executed. Finally, in *Plainfield Twp.*, there was absolutely no reference to pension benefits in the collective bargaining agreement. Indeed, the Board points to Judge Friedman's

view in that case that the result would have been different if the union had incorporated the ordinance's provisions into the collective bargaining agreements. *Plainfield Twp.*, 695 A.2d at 986. Here, the Board submits the language of the Agreement expressly incorporates all pension ordinances then in effect. Therefore, the Board reasons that this matter is not controlled by *Plainfield Twp.*

Related thereto, the Board offers that, while the Commonwealth Court focused on the illegality of the PLSDO benefit, the Auditor General only found that the City's receipt of state aid for PLSDO participants was unlawful; the PLSDO was not in and of itself considered to be illegal. Moreover, as noted by the Board, less than four months prior to the Commonwealth Court's decision in this appeal, the Commonwealth Court held that the City's receipt of state aid for PLSDO participants was lawful. *City of Erie v. Dept. of the Auditor General*, 961 A.2d 234 (Pa.Cmwlth.2008), *petition for allowance of appeal denied*, 603 Pa. 705, 983 A.2d 1250 (2009) (order). Thus, according to the Board, the Commonwealth Court's decision, based upon case law involving the negotiation of illegal matters, was misguided under the facts before the court. As the PLSDO benefits were not illegal, the Board contends the statutory mandate set forth in Act 111 to negotiate changes in pension benefits is applicable.

Finally, the Board argues that the Commonwealth Court's interpretation of the Agreement is not supported by the record. The Commonwealth Court found that the City had no statutory obligation to bargain over changes in pension benefits because it found that the language used in Article XI, Section 1 was too general, that the DROP plan section of the Agreement was left blank, and that other pension benefits were modified in the Agreement. Yet, according to the Board, the evidence equally supports a finding that the PLSDO benefit was discussed during negotiations and was left blank because the parties decided to allow the PLSDO benefit to be incorporated into the Agreement through the general clause incorporating existing ordinances found in Article XI, Section 1. Similarly, while the Commonwealth Court relied on

bolded language in the Agreement stating, "the Firefighters' Pension Plan will be amended to increase the line-of-duty disability pension from 50% to 75%," the Board responds that this language is meaningless unless the City and the Union intended to incorporate by reference the underlying pension ordinance that effectuates the benefit in the first instance. The Board concludes the City and the Union discussed the pension benefits and agreed to incorporate the existing ordinance into the collective bargaining agreement by reference. Indeed, the parties continued to apply the PLSDO consistent with the Agreement and the ordinance until the City unilaterally rescinded this benefit while the Agreement remained in effect. This, according to the Board, was in violation of Act 111's mandate to bargain, and, thus, the Commonwealth Court erred in holding to the contrary.

The City counters that it did not commit an unfair labor practice when it unilaterally repealed an ordinance granting a pension benefit to the firefighters which, according to the City, was not contained in the parties' Agreement or incorporated by reference therein. The City stresses that the validity of the lower court's holding does not turn on whether or not a pension benefit is found to be illegal by a court, and acknowledges that, here, the PLSDO was not found to be illegal. Rather, according to the City, it was permitted to rescind a benefit that was implemented independent of the collective bargaining process so long as it demonstrated that the term was not bargained for and that the City did not gain a bargaining advantage as a result of the benefit. The City points to *Plainfield Twp.*, in which, according to the City's interpretation, the Commonwealth Court determined that, absent evidence that a pension benefit was actually negotiated and specifically incorporated into a collective bargaining agreement, a municipality may rescind an ordinance without negotiating with a union. Indeed, the City avers that, applying the rule of *Plainfield Twp.*, the Commonwealth Court properly concluded that the City did not receive any advantage from a bargained-for term, and, thus, it was not an unfair labor practice to unilaterally rescind the pension benefit. This

rationale, according to the City, is consistent with caselaw from our Court and the Commonwealth Court, citing *Fraternal Order of Police, E.B. Jermyn Lodge # 2 v. Hickey*, 499 Pa. 194, 452 A.2d 1005 (1982) (plurality),[11] and *Upper Chichester Township v. PLRB*, 153 Pa.Cmwlth. 446, 621 A.2d 1134 (1993).

Additionally, the City contends that the Board erroneously found that the PLSDO ordinance became part of the Agreement by virtue of Article XI, Section 1, in which the parties agreed that the pension fund be governed in accordance with the statutes of the Commonwealth and the City's ordinances or regulations then in effect. The City argues that this section speaks to the governance of the "fund," and is merely an omnibus clause that does not refer to any specific benefit plan and does not identify any negotiated pension benefit. Rather, the City posits that it does nothing more than direct the fund administrators to adhere to prevailing statutes, ordinances, and regulations which were pertinent to the fund. Thus, the City maintains there is no evidence indicating that the parties bargained for the PLSDO, that the City received anything in consideration for those benefits, or that the PLSDO was incorporated into the Agreement.

The foundational principles that underlie this appeal were considered by our Court last year, in two cases decided the same day: *Borough of Ellwood City v. PLRB*, 606 Pa. 356, 998 A.2d 589 (2010), and *City of Phila. v. IAFF*, 606 Pa. 447, 999 A.2d 555 (2010). We explained in those cases that, in 1968, in the face of illegal strikes and labor unrest in the public sector, the General Assembly enacted Act 111, which granted to police and fire personnel the right of collective bargaining. We noted that "[t]he law relating to police and fire personnel, whose services are so vital to an ordered society ... was created to strike a more perfect balance between the need of the Commonwealth to insure public safety and the rights of the worker." *Ellwood City*, 606 Pa. at 367, 998 A.2d at 596 (quoting *Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 77, 656 A.2d 83, 89

11. The City, as well as the Commonwealth Court below, failed to recognize or acknowledge that *Hickey* was a plurality decision.

(1995)). Central to Act 111 and its passage to quell labor unrest was the employees' ability to "have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and ... the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of [Act 111]." 43 P.S. § 217.1; *Ellwood City*, 606 Pa. at 367–68, 998 A.2d at 596–97; *IAFF*. As our Court explained in *Twp. of Moon*, 508 Pa. at 503, 498 A.2d at 1309, "the General Assembly was committed to the view that the right to collective bargaining over terms and conditions of employment was critical to the restoration and maintenance of harmony in the public employment sector." Ultimately, we stressed in *Ellwood City* "the importance of collective bargaining over the terms and conditions of their employment cannot be understated." *Id.* 606 Pa. at 368, 998 A.2d at 596.

■■ With this understanding of the bedrock principle of the right of collective bargaining by police and fire personnel in mind, we turn to the issue before us. As our analysis involves the interpretation of the requirements for collective bargaining under Act 111, we necessarily begin by considering the Statutory Construction Act. 1 Pa.C.S.A. §§ 1501 *et seq.* The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). The best indication of the legislature's intent is the plain language of the statute. When the words of a statute are clear and unambiguous, there is no need to go beyond the plain meaning of the language of the statute "under the pretext of pursuing its spirit." *Id.* § 1921(b). Thus, only when the words of a statute are ambiguous, should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c). *Id.* § 1921(c); *see generally Bayada Nurses, Inc. v. Com. Dept. Labor and Indus.*, 607 Pa. 527, 550–54, 8 A.3d 866, 880–81 (2010).

 As the clearest indication of the legislature's intent is the words it has employed, we begin our analysis by reviewing the language of Act 111. Act 111, in setting forth obligations to bargain in the context of police and firefighters, specifically mandates bargaining over pension benefits: "Policemen or firemen ... shall ... have the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, *pensions and other benefits.*" 43 P.S. § 217.1 (emphasis added). Thus, the clear and unambiguous language of Act 111 makes manifest that pension benefits constitute a mandatory subject of bargaining. *See also IAFF*, 606 Pa. at 471, 999 A.2d at 569 ("The General Assembly intended that the scope of collective bargaining ... be viewed broadly, to encompass any subject that is rationally related to the 'terms and conditions of employment,' including employee 'compensation, hours, working conditions, pensions, retirement and other benefits.' ").

 Under the PLRA, which, as noted above, is read in *pari materia* with Act 111, an employer commits an unfair labor practice if it refuses to collectively bargain with a union representing its employees over these mandatory topics. Specifically, Sections 6(1)(a) and (e) of the PLRA provide:

(1) It shall be an unfair labor practice for an employer—

(a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act.

\* \* \*

 (e) *To refuse to bargain collectively with the representatives of his employes,* subject to the provisions of section seven (a) of this act.

43 P.S. § 211.6(1)(a) and (e) (emphasis added) (footnotes omitted).[12] As a refusal to bargain collectively over a mandatory subject of bargaining is an unfair labor practice, an employer's

12. Consistent with the PLRA and Act 111 being read in *pari materia,* "unfair labor practice charges regarding violations of Act 111 are brought under the provisions of Section 6 of the PLRA." *Wilkes–Barre Twp. v. PLRB,* 878 A.2d 977, 979 n. 2 (Pa.Cmwlth.2005).

unilateral change of such a subject without first negotiating with the union has been held to similarly interfere with the employees' fundamental collective bargaining rights, as it works as a circumvention of the employer's duty to negotiate and thwarts the objectives of Act 111. Thus, akin to a refusal to bargain, a unilateral change of a mandatory subject of bargaining constitutes an unfair labor practice. *See Ellwood City,* 606 Pa. at 366–67, 998 A.2d at 595.

The fact that a public employer changes benefits through the enactment or repeal of an ordinance does not alter this calculus. Indeed, if this were the case, a public employer could grant benefits through ordinances and simply unilaterally repeal them when so desired. We warned about such a scenario in *Ellwood City* where we explained that Act 111's specific exercise of the Commonwealth's police power through the granting of collective bargaining rights is not subservient to ordinances created through general police powers:

> [T]he Borough Code also endows a municipality with the authority to create a police department, to fix weekly hours of police officers, to remove or suspend police officers, and to fix their compensation. 53 P.S. §§ 46121, 46125. Yet, it cannot be seriously suggested that this authority precludes mandatory collective bargaining over wages, hours of work, and conditions of employment. Indeed, if this were the case, a borough could eviscerate the very essence of statutorily-mandated collective bargaining by legislating in areas which are traditionally subject to mutual agreement through collective bargaining under its power to regulate the health, safety, and general welfare of its citizens.

*Id.* at 377, 998 A.2d at 601–02.

▮▮▮ Thus, the plain and unambiguous terms of Act 111 obligate the parties to bargain over mandatory subjects of bargaining, including pension benefits. Furthermore, an employer's unilateral change to a mandatory subject of bargaining, such as pension benefits, even through the enactment or repeal of an ordinance, constitutes an unfair labor practice.

While not necessarily rejecting these principles, the City's principal contention, consistent with the Commonwealth Court's opinion below, is that, while it modified the existing pension plan by enacting Ordinance 75–2006, which eliminated the firefighters' PLSDO without bargaining, this was not an unfair labor practice. The City posits it was not required to bargain over the rescission of these pension benefits because, according to the City, such benefits were not bargained for, and it cannot be said that the City gained a bargaining advantage that flowed from granting these benefits. In essence, the City suggests that its unilateral repeal of the PLSDO without bargaining with the Union over the elimination of this benefit is an exception to the general obligation to bargain over mandatory subjects of bargaining. In support of its position, the City relies upon *Plainfield Twp.*, as well as our Court's plurality decision in *Fraternal Order of Police, E.B. Jermyn Lodge # 2 v. Hickey, supra.*

In *Plainfield Twp.*, Plainfield Township enacted a police pension ordinance pursuant to the Police Pension Fund Act ("Act 600").[13] The ordinance, as originally promulgated, and in conformity with the requirements of Act 600, required 25 years of service for pension eligibility. Plainfield Township, however, subsequently amended the police pension ordinance to reduce the service requirement to 20 years. Several years later, the Plainfield Township Policemen's Association came to represent the Township's police officers and negotiated a collective bargaining agreement with Plainfield Township. The agreement, however, did not address the subject of police pensions. A later audit by the Auditor General indicated that the Township's police pension ordinance was illegal, as it did not conform to Act 600. In response, Plainfield Township amended its pension ordinance to require 25 years of service, but did so without bargaining with the union. The union filed an unfair labor practice charge against the Township alleging that its unilateral changes to the pension plan without bargaining violated Act 111. The Board determined that Plainfield

13. Act of May 29, 1956, P.L. (1955) 1804, §§ 1–12 (as amended, 53 P.S. §§ 767–778).

Township had not engaged in an unfair labor practice by amending the police ordinance and a three-judge panel of the Commonwealth Court affirmed.

The Commonwealth Court found that, although the union had the right and opportunity to bargain with Plainfield Township regarding pension benefits, it did not incorporate the previously-enacted ordinance's provisions into the collective bargaining agreement, and, thus, the illegal benefit was subject to unilateral change. The court also noted that its decision was distinguishable from its prior decision in *Upper Chichester Twp.*, in which a township bargained with the union over an illegal pension term which was ultimately included in the parties' collective bargaining agreement. As explained by the *Plainfield Twp.* court, in *Upper Chichester Twp.*, the court concluded that the township committed an unfair labor practice when it later altered the pension provision to comply with Act 600: "[B]ecause the township benefitted from the agreed-to term, it could not unilaterally alter the provision to comply with Act 600 merely because the bargained-for term was illegal." *Plainfield Twp.*, 695 A.2d at 986 n. 9. The *Plainfield Twp.* court concluded that "the illegal pension term here was not bargained for or incorporated into the collective bargaining agreement, but rather, was merely contained within a preexisting ordinance." 695 A.2d at 986. Thus, the court determined that *Upper Chichester Twp.* was distinguishable, and that Plainfield Township did not violate Act 111 by its unilateral change to the pension ordinance.

Similarly, in *Hickey,* a collective bargaining agreement between the City of Scranton and the members of its police force provided that, in the event the City of Scranton should employ a Commissioner or Superintendent of Police, the person who filled the position must come from the ranks of the Scranton Police Department. In 1978, a newly elected mayor appointed a Superintendent who, although qualified, did not come from the ranks of the Scranton Police Department. The City of Scranton contended that the provision in the collective bargaining agreement was illegal. The FOP, the police officers' representative, sought mandamus to remove the mayor's ap-

pointee. Emphasizing the integrity of the bargaining process, and that collective bargaining was applied to the public sector on the premise that it would further harmonious relationships between the public employer and the employees, a plurality of our Court found that the statutorily-mandated obligation to bargain in good faith was not met by permitting the public employer to avoid performance of a term by questioning its legality after having received the advantages that flowed from the term's acceptance. 499 Pa. at 199, 452 A.2d at 1008.

These decisions provide that, when faced with an illegal term or condition of employment, an employer may unilaterally change the term if it is not incorporated into the collective bargaining agreement between the parties, but may not reject such a term if it was part of a collective bargaining agreement, as the employer benefitted during negotiations from agreeing to such benefit. Significantly, underlying each of these decisions was not simply whether the employer somehow gained a bargaining advantage by unilaterally changing a condition of employment, but, rather, whether there was some valid reason to not require the employer to fulfill its statutory mandate to bargain, i.e., the existence of an illegal term. *Accord Borough of Ellwood City v. Ellwood City Police Dept.*, 573 Pa. 353, 825 A.2d 617 (2003) (holding arbitrator's award was properly vacated where tribunal defined actuarial soundness in a manner inconsistent with relevant statutory funding requirements under Act 205 and Act 600).

This necessary premise in these decisions of illegality underscores the error in the City's reliance on these cases and in setting forth a broad exception to the general obligation to collectively bargain. The City betrays no recognition of the crucial distinction between a legal term and an illegal term and instead suggests the legality of the term in question is irrelevant. The City's novel attempt to extend an exception to legal subjects of bargaining fails to appreciate the unambiguous language of Act 111 and foundational principles of collective bargaining which requires negotiation over mandatory subjects such as pensions. Finally, and contrary to the City's

contention, to the extent *Plainfield Twp.* can be read to hinge solely on whether a term was contained in the parties' collective bargaining agreement, it is hereby disapproved.

 Simply stated, Act 111 expressly and broadly requires that the parties must bargain over legal mandatory subjects of bargaining, such as pension benefits, before a party may unilaterally change such benefits. This fundamental mandate of labor law is applicable regardless of whether the collective bargaining agreement expressly mentions such benefits; whether they have been incorporated into the agreement by reference; or whether the agreement is silent on that mandatory subject of bargaining.[14] *See Ellwood City*, 606 Pa. at 366–67, 998 A.2d at 595 (finding employer's unilateral change in tobacco policy, which was not set forth in collective bargaining agreement, through enactment of ordinance constituted unfair labor practice); *see also Indiana Borough v. PLRB*, 695 A.2d 470 (Pa.Cmwlth.1997) (holding unilateral shift change constituted unfair labor practice even though shift schedule not set forth in agreement).[15]

14. We note that the range of topics over which collective bargaining is required may be limited or waived. First, certain topics are deemed to be inherent managerial prerogatives, and, thus, not subject to collective bargaining. *Ellwood City*, 606 Pa. at 374, 998 A.2d at 599. Additionally, the parties also might agree to expand those topics which are in the discretion of management through the adoption of a "management rights" clause in their collective bargaining agreement. *See City of Phila. v. FOP*, 564 Pa. 290, 299–300, 768 A.2d 291, 297 (2001). The parties could also agree to a precise "zipper" or "waiver" clause, which, while strictly construed, could limit the duty to bargain on any subject during the life of a collective bargaining agreement except as its express provisions demand. *See Com. of Pa. v. PLRB*, 74 Pa.Cmwlth. 1, 459 A.2d 452, 456 (1983). None of these exceptions are present in this appeal. While the City broadly asserts that the right to legislate, enact, and rescind ordinances is a core function of public employers and should be considered an inherent managerial right exempt from collective bargaining obligations, we previously addressed and rejected this selfsame argument in *Ellwood City*, 606 Pa. at 377–78, 998 A.2d at 601–02.

15. This being the case, there was no need for the lower tribunals, or for our Court, to examine the Agreement to determine if the PLSDO was incorporated therein, and, thus, we are not required to opine as to the proper manner by which the Board or our courts should interpret a collective bargaining agreement.

██ Here, there is no dispute that the PLSDO itself was legal. Rather, the Auditor General criticized and described as illegal certain aspects of the PLSDO that pertained to the City's election of state aid for PLSDO participants. Remarkably, less than four months before the Commonwealth Court's decision in this appeal, the Commonwealth Court held that the City's receipt of state aid for PLSDO participants was *lawful* and did not violate Act 205. *See City of Erie v. Dept. of the Auditor General, supra.* Because the cases cited by the City and the Commonwealth Court in support of an exception to the mandate to bargain all share the predicate of an illegal term, and the benefit before us is not illegal, the decisions offered by the City, and relied upon by the Commonwealth Court, are wholly inapt.[16]

In conclusion, we hold that the plain and unambiguous terms of Act 111 obligate parties to bargain over mandatory subjects of bargaining. Pension benefits are expressly listed in the statute as a mandatory subject of bargaining. Therefore, the City was obligated to bargain over pension benefits. Furthermore, an employer's unilateral change to a mandatory subject of bargaining constitutes an unfair labor practice. Here, the City enacted Ordinance 75–2006, which repealed the firefighters' PLSDO benefit and failed to bargain with the Union over its rescission of this pension benefit. Thus, the City committed an unfair labor practice when it unilaterally repealed the PLSDO without bargaining with the Union. Finally, we find that the purported exception to the statutory duty to bargain offered by the City, and employed by the Commonwealth Court, is inapposite to the matter *sub judice*, as such exception requires as a predicate an illegal term or condition of employment, and here it is uncontested that the pension benefit at issue in this appeal is legal and proper. For the above stated reasons, we reverse the order of the Commonwealth Court.

Jurisdiction relinquished.

16. As the benefit at issue in this appeal is legal, we express no opinion regarding the vitality or lack of exceptions to an employer's duty to bargain under Act 111 when faced with an illegal term or condition of employment.

Chief Justice CASTILLE, Justices SAYLOR, BAER, McCAFFERY, and ORIE MELVIN join the opinion.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

I concur with the majority's decision to reverse the order of the Commonwealth Court, and agree the City was required to bargain with the Union before repealing the ordinance authorizing the Partial Lump Sum Distribution Option (PLSDO). I write separately to note the City was required to do so because the PLSDO was a bargained-for benefit included in the Collective Bargaining Agreement (CBA), not because pension benefits are always subject to bilateral bargaining. In my judgment, the majority's focus on pension benefits as a mandatory subject of bargaining and the legality of the benefits does not sufficiently emphasize the significance of the fact this right has first been exercised.

I agree with the majority that Act 111 clearly provides firefighters the "right to bargain collectively with their public employers concerning the terms and conditions of their employment, including ... pensions...." 43 P.S. § 217.1. However, the right to bargain does not mean that right must be exercised. However, "[o]nce [a] matter is included in a collective bargaining agreement, it becomes, like any other contractual provision, binding on the parties to the agreement." *City of Allentown v. Local 302, Intern. Ass'n of Fire Fighters*, 511 Pa. 275, 512 A.2d 1175, 1181 (1986). Once included in a CBA, a public employer may not unilaterally alter a bargained-for provision. *See id.*

On May 15, 2004, the City added the PLSDO benefit to the firefighter pension plan by enacting an amendment to city ordinances. The CBA was effective from January 1, 2005 through December 31, 2007. The CBA provided:

The Firemen's Pension Fund shall be governed in accordance with the provisions of statutes of the Commonwealth of Pennsylvania and City of Erie ordinances or regulations now presently in effect and promulgated. **Effective Janu-**

**ary 1, 2006, the Firefighters' Pension Plan will be amended to increase the line-of-duty disability pension from 50% to 75%.**

Majority Op. at 666 n. 2, 32 A.3d at 628 n. 2 (quoting Article XI, Section 1) (emphasis in original).

The pension plan was "presently in effect" when the CBA was agreed upon, and thus the CBA included the PLSDO. Accordingly, the PLSDO was a pension benefit provision subject to collective bargaining.