551 A.2d 622

Michael Palyok, Appellant *v.* Borough of West Mifflin et al., Appellees.

Argued May 27, 1988, before Judges BARRY and McGINLEY, and Senior Judge KALISH, sitting as a panel of three.

*Ronald P. Koerner, Gatz, Cohen, Segal & Koerner,* for appellant.

*Donald C. Fetzko,* for appellees.

OPINION BY JUDGE McGINLEY, December 13, 1988:
This is an appeal by Michael Palyok (Palyok) from an order of the Court of Common Pleas of Allegheny County (trial court) which denied a Motion For Summary Judgment on Palyok's Complaint in Mandamus and granted the Motion for Summary Judgment of the Borough of West Mifflin et al., (Borough).

The stipulated statement of facts, as adopted by the trial court, establishes that Palyok was employed as a full time police officer by the Borough from November

1, 1958, until his retirement on May 1, 1985. During his employment, Palyok contributed a percentage of his salary and overtime pay to the police pension fund. The Borough also deducted the same percentage pension contribution from the pay he received for performing "extra work."[1] On December 10, 1957, pursuant to Sec-

---

[1] Stipulation of Fact No. 6 provides:

That extra work is the nomenclature used to describe work periodically requested by an outside entity, not a part of the Borough, for the services of a Police Officer usually for crowd control or directing traffic, such as a contractor, the School District, etc. The outside entity pays the Borough a rate per hour for the Services of each Police Officer required. The Borough makes deductions from the gross rate per hour for Workmen's Compensation, Disability Insurance, Social Security, and a clerical fee. The net figure after the said deductions are then paid to the Police Officer who performed the extra work as gross pay. From the Officers Gross [sic] pay, the Borough deducts withholding taxes, Social Security and pension contribution. Extra work is assigned by the West Mifflin Police Officers Association, Wage and Policy Committee, the Bargaining Unit for Police Officers in the Borough of West Mifflin, who keeps a roster of Police Officers who volunteer for extra work. The Association makes assignments for extra work from the roster by rotation. Individual Officers who volunteer for the roster still have the option to accept or reject any specific extra duty work. In the event of a rejection, the Association then contacts the next name on the roster, if he wants the assignment, etc. The Association keeps the time cards and directly bills the contractor for services rendered, but payment is remitted to the Borough. After payment is received, the Borough allocates the appropriate amount to the Police Officer's pay-check, based on the names of the Police Officer and amount due as submitted by the Association to the Borough. The Borough of West Mifflin does not mandate that any Police Officer accept or reject any extra work available, nor does the Borough administer, schedule or assign any Police Officer to extra work, however, extra work cannot be accepted by any Po-

tion 1 of the Police Pension Fund Act, Act of May 24, 1893, P.L. 129, *as amended*, 53 P.S. §761, the Borough enacted Ordinance No. 313 establishing a Police Pension Fund. On February 6, 1973, the Borough enacted Ordinance No. 744 which amended Section 3 entitled, "Retirement Benefits," of Ordinance No. 313. Ordinance No. 744 reiterates portions of Section 5 of the Police Pension Fund Act (Act), Act of May 29, 1956, P.L. (1955) 1804, *as amended*, 53 P.S. §771, and in relevant part provides: "the monthly pension or retirement benefits shall be one-half the monthly average salary of such members during the last sixty (60) months of employment." Ordinance No. 923 enacted May 8, 1986, amended Ordinance No. 744, Section 3, by reducing the formula base period from sixty months to the last thirty-six months of employment. Palyok's contributions were made pursuant to Section 6 of the Act, 53 P.S. §772.[2] His contribution from November 1, 1958, through and including March 31, 1972, was based on

---

lice Officer during his duty hours scheduled by the Borough. Any dispute over eligibility, entitlement or rotation is solely between the Wage Policy Committee of the Association and the Police Officer. No claim by any aggrieved Police Officer can be presented to the Borough. There is no set number of extra work hours a Police Office can anticipate during a work year. The variables in the extra work are the number of Police Officers who volunteer for the extra work roster; the number of Police Officers who accept any specific assignment, and the number of requests that the Borough receives, and the Mayor approves during the year.

[2] Section 6 of the Act in relevant part provides:

Members shall pay into the fund, monthly, an amount equal to not less than five per centum nor more than eight per centum of monthly compensation. Where positions covered by the fund are included in an agreement under the Federal Social Security Act, members shall pay into the fund, monthly, an amount determined as follows: (1) if

2% of the portion of monthly compensation of which Social Security allowances are payable, and 5% on any monthly compensation in excess of that on which Social Security allowances are payable. From April 1, 1972, through and including December 31, 1985, Palyok contributed monthly an amount equal to not less than 2.75% of that portion of monthly compensation of which Social Security allowances are payable, and 5% on any monthly compensation in excess of that on which Social Security allowances are payable. Palyok contributed $9,292.52 to the Police Pension Fund during the period of his employment.[3] Palyok's salary for the last thirty-six months was $86,727.65. Palyok's total compensation for the last thirty-six months was $96,835.76 which was comprised of the earned salary of $86,727.65, overtime of $1,429.88, and extra work of $8,678.23. The Borough calculated Palyok's retirement benefits on his earned salary of $86,727.65 divided by thirty-six months, divided by two which resulted in a payment of $1,204.55 per month.

---

the pension plan established under the provisions of this act provides for no offset under subclause (ii) of the second paragraph of section 5, five per centum of total compensation or (2) if such pension plan provides for an offset under subclause (ii) of the second paragraph of section 5: (i) on compensation on which social security taxes are payable at a rate calculated by subtracting from five per centum the product obtained by multiplying three per centum by such offset percentage; and (ii) on compensation in excess of that on which social security taxes are payable, if any, five per centum. . . . (Footnote omitted.)

[3] The Borough by Resolution No. 572, adopted November 7, 1985, eliminated contributions from employee police members to the West Mifflin Police Pension Fund for the calendar year 1985. Palyok received a refund in the amount of $434.70, a sum equal to his contributions to the pension fund from January 1, 1985 through May 1, 1985.

Palyok's complaint in Mandamus challenged the Borough's refusal to include the overtime pay and extra work pay in calculating his retirement benefits. Both Palyok and the Borough filed Motions for Summary Judgment. After oral argument, the trial court granted the Borough's Motion and denied Palyok's Motion. Palyok appealed.

Initially, it should be noted that Palyok improperly filed this action in mandamus. Mandamus is "an extraordinary writ which lies to compel the performance of a ministerial act where there is a clear legal right in the plaintiff, a corresponding duty in the defendant and a want of any other adequate and appropriate remedy." *Cottone v. Kulis*, 74 Pa. Commonwealth Ct. 522, 460 A.2d 880 (1983). Section 1 of the Police Pension Fund Act, 53 P.S. §761 provides: "[e]ach borough, . . . of this Commonwealth maintaining a police force of three or more full-time members shall, . . . establish, by ordinance . . . a police pension fund. . . ." Section 5 of the Act provides: "[m]onthly pension or retirement benefits . . . shall be computed at one-half the monthly average salary of such member during not more than the last sixty nor less than the last thirty-six months of employment." Palyok has not alleged that the Borough has failed to correctly calculate his pension or that the Borough has used a different formula than the authorized statutory formula in its calculations. The Borough was performing its duty of paying Palyok a monthly pension in accordance with the formula dictated by the Act, therefore mandamus was inappropriate.[4] The Borough is a local agency under section 101 of the Local Agency Law, 2 Pa. C. S. §101 and its calculation of Palyok's pen-

---

[4] The trial court found that Mandamus was not appropriate based on the facts of this case because the Borough was performing its duty of paying Palyok a monthly pension in accordance with the formula prescribed in Section 5 of the Act.

sion benefits is an adjudication under section 101 of the Local Agency Law. Adjudication is defined as: "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights . . . of any or all parties to the proceeding in which the adjudication is made. . . ." 2 Pa. C. S. §101. Sections 708(a) and (c) of the Judicial Code, 42 Pa. C. S. §§708(a) and (c) provides:

> §708. Improvident administrative appeals and other matters
>
> (a) General rule.—No objection to a governmental determination shall be defeated by reason of error in the form of the objection or the office of clerk of court in which the objection is filed.
>
> . . .
>
> (c) Other matters.—If a complaint in the nature of equity, *mandamus*, prohibition, quo warranto or other original process is commenced in any court against a government unit or one or more of the persons for the time being conducting its affairs, as such, objecting to a governmental determination by any of them, where the proper mode of relief is an appeal from the determination of the government unit, this alone shall not be a ground for dismissal, but the papers whereon the process against the government unit or any of such persons was commenced shall be regarded and acted on as an appeal from such determination of the government unit and as if filed at the time such process was commenced. (Emphasis added.)

Accordingly, we will treat this matter as if Palyok had properly appealed under the Local Agency Law. *Gardner v. Jenkins,* 116 Pa. Commonwealth Ct. 107, 541 A.2d 406 (1988); *Haines v. Jenkins,* 104 Pa. Commonwealth Ct. 201, 521 A.2d 522 (1987).

Under Section 754(a) of the Local Agency Law, 2 Pa. C. S. §754, where the trial court hears the appeal *de novo* our scope of review is limited to a determination of whether the trial court manifestly abused its discretion, committed an error of law, or whether appellant's constitutional rights have been violated. *Gardner*.

Palyok raised two issues before the trial court: 1) whether the term "salary" as used in Section 5 of the Act is limited to a member's regular stated salary or includes pay for overtime and extra work; 2) whether the entire statutory scheme requiring mandatory payment into the pension fund based on a percentage of pay for overtime pay and extra work pay results in an unconstitutional forfeiture.

Palyok argues that his pension payments calculated under Section 5 of the Act "at no more than one-half the *monthly average salary*" (emphasis added) should include the contributions from his pay for overtime and extra work. While the Borough offers overtime to Palyok and deducts contributions from his overtime pay, it is clear that the deductions and contributions from the extra work pay are by a separate and distinct agreement. Stipulation of Fact No. 6 states that the West Mifflin Police Officers Association, Wage and Policy Committee (Association), the bargaining unit for the police officers in the Borough, makes assignments for extra duty work to the requesting entity. The entity disburses payments for the extra duty work to the Borough and the Borough makes deductions including pension contributions. The Collective Bargaining Agreement (CBA) has not been introduced and made part of the record and other than a slight reference to pension calculations,[5] only the

---

[5] The Borough raises in its brief (Appellee's Brief, p. 5) that the applicable CBA states Palyok's pension is to be calculated on the basis of his monthly salary during the thirty-six month period immediately preceding his retirement date.

agreement concerning extra work as stipulated to by the parties is of record. Obviously if Palyok has agreed or authorized someone to contract for him concerning such an agreement that agreement is separate and distinct from his rights as defined by the legislature. Therefore, we cannot accept Palyok's argument that extra pay should be considered salary. Palyok, or anyone he authorized to contract on his behalf, can freely negotiate and agree to deduct and contribute whatever amounts decided upon to a mutually agreed upon fund where such outside income is involved. We limit our further discussion to the deductions and contributions from Palyok's overtime pay.

Palyok first argues that his overtime pay should, in light of the spirit and purpose of retirement laws, be considered salary for purposes of pension benefit calculations. We acknowledge that our courts have held that the basis from which payments were made into the fund should be the basis used to compute the pension payments made from the fund. *Rockwell v. York County Retirement Board,* 405 Pa. 406, 175 A.2d 831 (1961); *Newhouse v. Board of Pensions and Retirement,* 33 Pa. Commonwealth Ct. 81, 380 A.2d 1315 (1977) and *York Paid Firemen's Pension Fund Board v. Orendorff,* 53 Pa. Commonwealth Ct. 629, 419 A.2d 232 (1980). These cases, however, dealt with statutes other then the Act at issue here. We have previously interpreted the legislature's intent when it drafted Sections 5 and 6 of the Act. The able trial court relied upon our interpretation set forth in *Boro. of Beaver v. Liston,* 76 Pa. Commonwealth Ct. 619, 464 A.2d 679 (1983). In *Liston,* the defendant, a retired police officer, filed a complaint in equity to compel the Borough of Beaver to recalculate his base salary by including overtime pay for purposes of computing his monthly pension benefits. The retiree did not contribute from his overtime pay to the fund. In

*Liston* this Court interpreted the word "salary," as used for pension purposes, to be a fixed amount paid at periodic intervals, so that the overtime pay of a police officer was not considered salary for monthly pension benefit purposes. Furthermore, in *Liston* this Court reasoned that the exclusion of compensation other than salary, such as pay for extra work performed at various times and at irregular intervals by different employees promoted consistency and predictability in the collection of contributions and payment of benefits. We held that utilizing the uniform base salaries of eligible employees enables municipalities to predict with greater precision the amount of pension benefits required *in futuro* and adjust the contribution rates accordingly, thus contributing to the maintenance of a stable fund with sufficient assets.

We therefore conclude that the term "salary" as used in the Act and Ordinances Nos. 774 and 923 excludes overtime compensation. Thus the trial court correctly determined that the Borough's method of calculating Palyok's monthly pension amount was proper.

Lastly, Palyok contends that deductions and contributions from his overtime to the fund without a corresponding increase in monthly pension works an unconstitutional forfeiture upon him. Palyok asserts in his brief that he was not informed that his pension would not reflect his contributions from overtime until he requested his retirement and that this amounted to a unilateral reduction of his pension benefits. Palyok argues facts that are not included in the record and which were not considered by the trial court. There is nothing to support the allegation that Palyok's pension was reduced. There is nothing of record concerning whether other individuals, who retired prior to Palyok, received an increased pension as a result of their contributions from overtime pay. Also there is nothing of

record to indicate why or even if Palyok expected to receive a pension based upon such a calculation.

It is the law of this Commonwealth that unilateral modifications in the retirement system, after retirement eligibility requirements have been met, may not be adverse to the members. *Retirement Board of Allegheny Co. v. McGovern*, 316 Pa. 161, 174 A. 400 (1934). However, the facts of record do not establish that Palyok had a right to an increased pension as a result of his contributions from his overtime pay. Certainly, subsequent to *Liston*, the Act, as interpreted by this Court, directs that these contributions will not result in an increased monthly pension. Clearly, in Pennsylvania, the judicial construction of a statute becomes part of the act from the very beginning, particularly where, as in *Liston*, no new right was recognized and there was no change in the law. *Baker v. Aetna Casualty and Surety Company*, 309 Pa. Superior Ct. 81, 454 A.2d 1092 (1982).

Palyok also maintains that he has lost the use of the money he contributed to the pension fund from his overtime pay and that this amounts to an unconstitutional taking or forfeiture without due process. The fact that our legislature has determined that a police officer's pension fund contribution should be based upon monthly compensation, whereas his pension is based on monthly average salary does not violate due process. As the trial court noted Palyok was employed for 317 months, and made total contributions to the fund (including contribution from his extra work) of $9,292.52 or about $29.31 per month and Palyok will receive $1,204.55 per month as a pension. Depending upon his longevity he may receive less or more than his contributions to the fund. His contributions have not been lost. Additionally, as anticipated by the Act, the Borough, by Resolution, refunded contributions from employee police members to the West Mifflin Police Fund

for the calendar year 1985, in the amount of $434.70 to Palyok, a sum equal to his contributions from January 1, 1985 until his retirement on May 1, 1985. He has in fact benefited in the past because of the overfunding. Adherence to the Act's provisions has resulted in a stable fund with sufficient assets and the legislature's desired result has been achieved. Palyok has not been denied due process.

Although Palyok has contributed money from his overtime and extra pay to the pension fund the trial court correctly determined that he is not entitled to have these contributions included in calculating his "salary" for pension purposes under the Act.

The order of the trial court is affirmed.

## ORDER

Now, December 13, 1988, the order of the Court of Common Pleas of Allegheny County is hereby affirmed.

Judge MACPHAIL did not participate in the decision in this case.