IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Arnold, Pennsylvania,      :
     : No. 1519 C.D. 2015
            Appellant      : Argued: April 11, 2016
     :
               v.      :
     :
Wage Policy Committee of the      :
City of Arnold Police Department,      :
o/b/o Pamela Cimino      :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY JUDGE WOJCIK             FILED: May 20, 2016


The City of Arnold (City)[1] appeals the order of the Westmoreland County Court of Common Pleas (trial court) denying its motion to vacate a grievance arbitration award issued under the Collective Bargaining by Policemen or Firemen Act (Act 111).[2] We reverse.

Thomas Cimino (Decedent) died in April 2002, after serving as a City police officer for 11.77 years. In May 2002, the City's Controller informed his widow, Pamela Cimino (Widow), that she was entitled to a death/survivor benefit of $1,949.11 per month, which was 50% of Decedent's annual compensation at the time of his death.[3] This death benefit was reconfirmed in a July 2003 letter from

---

[1] The City is a Third Class City. *See* 121 The Pennsylvania Manual 6-46, 6-49 (2013).

[2] Act of June 24, 1968, P.L. 237, 43 P.S. §§217.1 - 217.10.

[3] Section 2 of Article XLIII–A of the Third Class City Code, Act of May 23, 1945, *as amended*, 53 P.S. §42002, states, in relevant part, that "[a]ll cities of the third class may create a
**(Footnote continued on next page…)**

the City's Controller to Widow.  Supplemental Reproduced Record (S.R.R.) at 1b-4b.

At the time of Decedent's death, Section 1 of Article XXIV of the collective bargaining agreement (CBA) between the City and its officers' bargaining representative, the Wage Policy Committee of the City of Arnold Police Department (Union), stated that "[p]olice officers who have completed twelve (12) years of full-time service shall be entitled to vest his/her pension . . . ." Reproduced Record (R.R.) at 35.  Additionally, Section 5 of Article XVII of the CBA stated, in relevant part:

> All pension benefits not in conflict with any sections of this Article and adopted by ordinance and in existence at the time of the signing of this Agreement are incorporated herein by reference into this Agreement including but not limited to . . . Ordinance No. 3 of 1987, Enacted October 1, 1987 [(Ordinance 3)].  However, the aforesaid provisions contained in this section shall be amended by the Municipality to provide that the widow of a Policeman shall receive one hundred percent (100%) of the pension which a Policeman would have been entitled to receive or was receiving at the time of his death.

*Id.* at 32-33.  *See also id.* at 24 ("Article I – Intent . . . It is also understood that all existing conditions of work, past practice[s] and benefits not in conflict with this Agreement, including all pension rights established previously by Agreement and/or implemented by ordinance shall continue in effect.").

---

**(continued…)**

retirement system for officers and employes of said cities, whether or not such officers and employes are protected by pension authorized by the laws of this Commonwealth and in force at the time of the passage of this act . . . ."

In turn, Section 5 of the City's Ordinance 3 states, in relevant part:

> Each Member shall be entitled to receive a pension benefit provided he has completed at least twenty-five (25) Years of Continuous Service with the Employer and has attained age fifty-five (55).

> * * *

> A Member entitled to a pension benefit shall receive during his lifetime a monthly retirement income which shall be equal to one-half (1/2) of his Final Monthly Average Salary.

> * * *

> If a Member who has completed more than ten (10) Years of Continuous Service with the Employer dies, whether or not in the line of duty, and regardless of the number of Years of Continuous Service with the Employer, his spouse . . . shall be entitled to receive a death benefit in the amount of fifty-percent (50%) of the Member's annual Compensation prior to his death . . . .

S.R.R. at 8b-9b.[4]

Although not specifically incorporated into the CBA, Ordinance No. 6 of 1997, Enacted November 11, 1997 (Ordinance 6), states in Section 4.02 of Article IV that "[t]he normal form of retirement benefit shall be paid monthly and

---

[4] Section 4303(f) of the Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. §39303(f), was repealed by the Act of November 24, 2015, P.L. 242. *See now* 11 Pa. C.S. §14303(f). The former Section 4303(f) stated, in pertinent part:

> Any police officer who has less than ten years of service and who dies . . . due to injuries . . . not in line of duty . . . may be entitled to a pension of twenty-five per centum of his annual compensation. For death or injuries received after ten years of service the compensation may be fifty per centum of his annual compensation.

3

shall be an amount equal to fifty percent (50%) of the Participant's Average Monthly Compensation." R.R. at 60. Additionally, Section 6.01(b) of Article VI of Ordinance 6 states, in pertinent part:

> If a Participant dies before becoming entitled to a Normal Retirement Benefit, a Death Benefit shall be paid as follows:
>
> * * *
>
> (b)    If the Participant dies, while an Employee of the Employer but not as the direct result of the performance of duties as an Employee of the Employer, a Death Benefit shall be paid monthly in an amount, . . . in the case of a Participant who has completed ten (10) Years of Service or more, equal to fifty percent (50%) of the amount which is equal to fifty percent (50%) of the Average Monthly Compensation of the Participant as of the Date of Death.

*Id.* at 62-63. Finally, Section 6.03 provides that "[t]he Death Benefit provided in this Article VI shall be paid to the surviving spouse of the Participant until such person dies or remarries . . . ." *Id.* at 63.

Widow began receiving the monthly death benefit in 2002 and received 142 monthly payments of $1,949.11 from the City. In February 2014, the City's Police Pension Board (Pension Board)[5] determined that, pursuant to Section

---

[5] Section 3 of Article XLIII–A of the Third Class City Code provides, in relevant part:

> In any such city which creates such retirement system there shall be created a board to be known as the "Officers and Employes Retirement Board" . . . . It shall be the duty of said board to register all persons employed by the said city, and to administer the collections and distribution of the fund, herein provided for, and make such reasonable rules in the premises as such board may deem necessary to carry into effect the provisions of this act.

**(Footnote continued on next page…)**

4

6.01(b) of Ordinance No. 6, Widow was only entitled to a monthly death benefit of $974.55, or 50% of 50% of Decedent's average monthly compensation. R.R. at 15. As a result, the Board reduced Widow's benefit to $974.55 per month and determined that she had received an overpayment of $138,386.10 that would be recouped at $10.00 per month until she dies or the overpayment is repaid in full. *Id.*

The Union grieved the Pension Board's action on Widow's behalf pursuant to the CBA and the matter was submitted to an arbitrator. Initially, the arbitrator rejected the City's assertion that the grievance was not arbitrable, explaining that "[t]he parties have agreed to submit any dispute to arbitration and have incorporated into the CBA by reference all pension plans and benefits. Thus this dispute is within 'any dispute' as provided in Article XVIII [of the CBA.[6]] Moreover, the City did not raise any issue of arbitrability at any stage of the grievance process or [when] select[ing] an arbitrator." R.R. at 5. Ultimately, the arbitrator sustained the grievance, concluding that

> the City's conduct in 2002 and 2003 was intended to provide the 50% benefit to [Widow] and the City at that time interpreted Ordinance 6 to provide that benefit. There was neither an error nor a mistake in 2002 nor 2003 nor in any subsequent inclusion of this interpretation in successive Act 205[Actuarial Valuation

---

**(continued…)**

53 P.S. §42003.

[6] Article XVIII of the CBA states, in relevant part, that "[s]hould any dispute arise between the [City] and the Policemen, the following grievance procedure shall be followed." R.R. at 33.

5

Reports (AVRs).[7]]. Regardless of the City's later reinterpretation, its conduct in 2002 and 2003 and in submitted AVRs with the 50% benefit included . . . created a term or condition of employment covered by the CBA and the City cannot now unilaterally alter that term or condition of employment.

*Id.* at 12.

The City filed a petition to vacate the award that the trial court denied. The trial court first determined that "no issues have been raised by [the City] regarding the regularity of the proceedings in this matter, nor have any issues been raised regarding the deprivation of constitutional rights." Trial Court 7/22/15 Opinion at 4. The trial court next found "that this matter does fall within the jurisdiction of the Arbitrator." *Id.* The court explained "that there is a dispute regarding the interpretation of the [CBA] and Pension Plan provisions, as evidenced by the numerous issues raised by [Widow] during arbitration. Therefore, this matter does fall within the jurisdiction of the arbitrator." *Id.* Finally, the trial court determined that the arbitrator did not exceed his powers in

---

[7] "Act 205" refers to the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. §§ 895.101-895.803, which governs how municipality pension plans are to be assessed for actuarial soundness. Act 205 provides for two types of actuarial reports. The first is an AVR under Chapter 2 of Act 205, which relates to disclosure of the pension assets and liabilities. Under Section 201, each municipality that has established or maintained a pension plan for its employees is required to file with the Public Employee Retirement Study Commission an AVR and update it biennially, *i.e.*, every other January 1. 53 P.S. §895.201. Under Section 202, the "Biennial Valuation" report in Chapter 2 describes the financial position of the pension fund and determines its actuarial soundness. 53 P.S. §895.202. The second type of actuarial report is under Chapter 3 of Act 205 which sets forth minimum funding standards and governs the minimum annual cash contributions to the pension fund. A "cost study" or "cost estimate" required under Section 305(a) tells the municipality how much funding each particular benefit in the plan requires in order to maintain actuarial soundness. 53 P.S. §895.305(a). This section requires a "cost estimate" of the effect of the proposed benefit plan modification be completed by chief administrative officer of the municipality prior to the adoption of any benefit plan modification by a municipality. *Id.*

the award by mandating that the City perform an illegal act. *Id.* at 4-5. The trial court noted that the Third Class City Code specifically permits the City to provide Widow "with the death benefit pension plan that she has been receiving." *Id.* at 5. The City then filed the instant appeal.

Initially, we note that an appeal of a grievance arbitration award under Act 111 is reviewed under a narrow certiorari standard which permits inquiry only into the following four areas: (1) the jurisdiction of the arbitrator; (2) the regularity of the proceedings; (3) an excess of the arbitrator's powers; or (4) the deprivation of constitutional rights. *Pennsylvania State Police v. Pennsylvania State Troopers Association (Keyes)*, 54 A.3d 129, 132-33 (Pa. Cmwlth. 2012), *appeal denied*, 69 A.3d 604 (Pa. 2013). As this Court has explained:

> Such limited review of arbitration awards "embodies a balancing of the legislative policy objective of shielding arbitration awards from judicial modification, with the residual need to avoid giving arbitrators unlimited powers."
>
> A preliminary determination of whether the issue involved implicates one of the four areas encompassed by narrow certiorari is subject to the court's non-deferential, plenary standard of review, unless that determination itself depends, to some extent, upon arbitral fact-finding or a construction of the relevant CBA.
>
> Subject matter jurisdiction is "a prerequisite to the exercise of the power to decide a controversy." The inquiry posed by the jurisdiction prong of narrow certiorari is whether an arbitrat[or] "act[ed] in that general class of controversies that the law empowers it to consider." To determine whether an arbitrat[or] had subject matter jurisdiction to render an award, the court looks to the Pennsylvania Constitution and the enabling statute, Act 111 . . . .

7

> Article 3, Section 31 of the Pennsylvania Constitution, Pa. Const. art. III, §31, authorizes the General Assembly to "enact laws which provide that the findings of panels or commissions, selected and acting *in accordance with law* for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and their public employers shall be binding upon all parties . . . ." [Emphasis added.] The phrase "in accordance with law" in Article 3, Section 31 "means that the arbitrators, in conducting their hearings and making an award . . . must adhere to the mandates of the enabling legislation."

*Borough of Gettysburg v. Teamsters Local No. 776*, 103 A.3d 389, 394-95 (Pa. Cmwlth. 2014) (citations and footnotes omitted). Moreover, "[i]t is well established that '[t]he issue of subject-matter jurisdiction cannot be waived and may be raised at any time by the parties or by the court *sua sponte*." *Id.* at 397 (citation omitted).

Section 1 of Act 111 grants "[p]olicemen . . . employed by a political subdivision of the Commonwealth, through labor organizations . . . the right to bargain collectively with their public employers concerning the terms and conditions of their employment, including . . . pensions . . . and . . . the right to an adjustment or settlement of their grievances or disputes . . . ." 43 P.S. §217.1. "The legislature thus expressed the unqualified intent that issues relating to grievance resolution be covered under Act 111." *Pennsylvania State Police v. Pennsylvania State Troopers Association (Betancourt)*, 656 A.2d 83, 88 (Pa. 1995). However, Act 111 does not subject every decision that a political subdivision makes to collective bargaining; rather, in Section 1, the General Assembly limited the right of collective bargaining to only those decisions that the political subdivision makes as an employer of its police or firemen and which concerns the terms and conditions of their employment. *City of Philadelphia v.*

8

*International Association of Firefighters, Local 22*, 999 A.2d 555, 566 (Pa. 2010). *See also Betancourt,* 656 A.2d at 90 ("[T]he award must encompass only terms and conditions of employment and may not address issues outside of that realm.") (citation omitted). Moreover, the assertion that an arbitrator considered a controversy outside the scope of the rights guaranteed by Article 3, Section 31 of the Pennsylvania Constitution and Act 111 "raises a question of jurisdiction." *City of Philadelphia*, 999 A.2d at 564.

Widow's right to a death/survivor benefit is not derivative of Decedent's rights under the CBA, but an independent right under the City's pension plan as implemented under the Third Class City Code and its Ordinances. *In re Appeal of Stanton*, 452 A.2d 496, 497-98 (Pa. 1982); *City of Altoona Paid Firemen's Pension Fund Association v. Dale-Dembeck*, 83 A.3d 279, 282 (Pa. Cmwlth. 2014). As outlined above, the instant dispute is based on the Pension Board's decision to reduce Widow's death/survivor benefit that is paid under the pension plan and to direct repayment of a purported overpayment of benefits. This case does not involve a dispute between the City as a public employer and Decedent as its employee that is subject to the collective bargaining and dispute resolution provisions of Article 3, Section 31 of the Pennsylvania Constitution, Act 111, and the CBA.[8]

Rather, the instant matter involves the decision of the Pension Board, a local agency, subject to the provisions of the Local Agency Law.[9] *See, e.g.,*

---

[8] *See generally Lincoln University of the Commonwealth v. Lincoln University Chapter of the American Association of University Professors*, 354 A.2d 576, 580 (Pa. 1976) ("It is well-settled that 'arbitration is a matter of contract, and, absent an agreement between the parties to arbitrate an issue, the parties cannot be compelled to arbitrate that issue.'") (citation omitted).

[9] 2 Pa. C.S. §§551-555; 751-754.

9

*Groman v. Officers' and Employees' Pension Board of City of Bethlehem*, 451 A.2d 789, 790-91 (Pa. Cmwlth. 1982) (holding that a retiree who challenged a pension board's disallowance of pension benefits as of the date of her 55th birthday had an exclusive statutory remedy under the Local Agency Law because the board was a local agency and its decision denying her application for benefits was an adjudication under the Local Agency Law).[10]  As a result, we are constrained to conclude that the arbitrator did not have subject matter jurisdiction in this matter and the trial court erred in failing to vacate the arbitration award on this basis.[11]

---

[10] *See also Wortman v. Philadelphia Commission on Human Relations*, 591 A.2d 331, 333 (Pa. Cmwlth. 1991) (holding that a letter from the local human relations commission dismissing an employee's complaint of employment discrimination was an appealable adjudication under the Local Agency Law because the dismissal was final, affected the employee's rights, and left no other remedy or forum for the enforcement of the employee's rights); *Palyok v. Borough of West Mifflin*, 551 A.2d 622, 625 (Pa. Cmwlth. 1988) , *rev'd on other grounds*, 586 A.2d 366 (Pa. 1991) (holding that a borough's calculation of a police officer's monthly pension benefit was an adjudication appealable under the Local Agency Law); *Drennan v. City of Philadelphia, Board of Pensions and Retirement*, 525 A.2d 1265, 1268 (Pa. Cmwlth. 1987) (holding that the formal findings and conclusions of the city's board of pensions and retirement regarding its denial of service-connected disability retirement benefits to a former police officer that were confirmed in its final adjudication complied with Section 555 of the Local Agency Law, 2 Pa. C.S. §555, pertaining to findings and conclusions).

[11] We note that our disposition does not necessarily leave Widow without a remedy because the record reflects that the Pension Board may have failed to afford her the process that was due under the Local Agency Law prior to its reduction of her death/survivor benefit. Section 101 of the Administrative Agency Law, 2 Pa. C.S. §101, defines "adjudication" as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the adjudication is made."  Section 101 of the Administrative Agency Law applies equally to local agencies governed by the Local Agency Law.  *Bruno v. Zoning Board of Adjustment of the City of Philadelphia*, 664 A.2d 1077, 1079 n.1 (Pa. Cmwlth. 1995).

In turn, Section 553 of the Local Agency Law states, in relevant part, that "[n]o adjudication of a local agency shall be valid as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard."  2 Pa. C.S. §553.  As the
**(Footnote continued on next page…)**

**(continued…)**

Supreme Court has explained, "[p]rocedural due process does not require notice and a hearing in every conceivable situation involving administrative action. However, these procedural safeguards should accompany a situation where the administrative action is adjudicatory in nature and involves substantial property rights." *Conestoga National Bank of Lancaster v. Patterson*, 275 A.2d 6, 9 (Pa. 1971) (citation omitted). Because the Pension Board's decision may not be a valid adjudication under the Local Agency Law, Widow may seek to vindicate her rights in this regard in an appropriate court proceeding.

In *Callahan v. Pennsylvania State Police*, 431 A.2d 946 (Pa. 1981), the claimant had been receiving benefits under the act frequently referred to as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-38. The claimant was notified by letter dated January 5, 1978, that his benefits would be terminated by his employer, the Pennsylvania State Police, effective February 22, 1978, and his request for a hearing on the termination was denied. The claimant filed a petition for review on March 3, 1978, invoking this Court's original and appellate jurisdiction. We determined that the letter informing the claimant that his benefits would be terminated was an adjudication under Section 101 of the Administrative Agency Law because it was a final determination of his property rights and that his appeal to this Court was untimely because it was not filed within 30 days. We also held that the claimant's action in our original jurisdiction was barred because of the availability of the appeal from the adjudication terminating his benefits. As a result, we quashed the appeal.

On further appeal, the Pennsylvania Supreme Court reversed, concluding that the January 5, 1978 letter was not a valid adjudication under Section 504 of the Administrative Agency Law, 2 Pa. C.S. §504, "because it failed to comply with the statutory requirements of notice of a hearing and an opportunity to be heard." *Callahan*, 431 A.2d at 948. As a result, the Supreme Court held that the letter did not provide a basis for appeal to this Court under the Administrative Agency Law. *Id.* Because the claimant alleged in the original jurisdiction action that his benefits were terminated without an adjudication as required by the Administrative Agency Law, and because he was denied the procedural due process provided thereunder, the Supreme Court reversed our order quashing the claimant's appeal and remanded the case to this Court "to direct the reinstatement of the order of compensation and to order the appropriate agency to conduct an administrative hearing on the question of the termination of benefits in accordance with the terms of the Administrative Agency Law." *Id.* at 949. *See also Kohl v. Rice Township Board of Supervisors*, 545 A.2d 480, 482 (Pa. Cmwlth. 1988) ("Mandamus has been recognized to be the proper action where (as here) the main issue is the propriety of a removal from a position which was heretofore properly held and to which reinstatement is being sought. Kohl's complaint in mandamus, absent a valid adjudication by the local agency could be proper. It was an error of law for the trial court to consider this complaint, pursuant to Section 708(c) of the Judicial Code[, 42 Pa. C.S. §708(c),] as an appeal from a local agency.") (citation omitted).

11

Accordingly, the trial court's order is reversed.

_____
MICHAEL H. WOJCIK, Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Arnold, Pennsylvania, | : | |
| | : | No. 1519 C.D. 2015 |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Wage Policy Committee of the | : | |
| City of Arnold Police Department, | : | |
| o/b/o Pamela Cimino | : | |

O R D E R

AND NOW, this 20<u>th</u> day of <u>May</u>, 2016, the order of the Westmoreland County Court of Common Pleas dated July 22, 2015, is reversed.

_____
MICHAEL H. WOJCIK, Judge