## CITY OF ALTOONA PAID FIREMEN'S PENSION FUND ASSOCIATION

### v.

## Kimberly Ann DALE–DAMBECK, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 11, 2013.

Decided Jan. 3, 2014.

---

Wade A. Kagarise, Hollidaysburg, for appellant.

Alan R. Krier, Altoona, for appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY President Judge PELLEGRINI.

Kimberly Ann Dale–Dambeck (Surviving Spouse) appeals from an order of the Court of Common Pleas of Blair County (trial court) finding her ineligible for surviving spouse pension benefits from the City of Altoona (City) Paid Firemen's Pension Fund Association (Association). The sole issue in this case is whether William Dambeck (Dambeck), Surviving Spouse's husband, died while "on pension" within the meaning of Section 4320 of the Third Class City Code (Code).[1]

Surviving Spouse's husband left his employment as a firefighter for the City on September 16, 2005, after 13 years of service. Because he had been with the City Fire Department (Department) for more than 12 years but less than 20 year s,[2] Dambeck exercised the option to vest his pension. Under this option, he would begin collecting pension payments when he reached the date at which he would have been eligible to retire had he remained with the Department.[3] However, Dam-

---

1. Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 39320.

2. Section 4320.1 of the Code, *added by* Act of June 16, 1993, P.L. 97, *as amended,* 53 P.S. § 39320.1(a), provides, in relevant part, that Cities "may provide for a limited vested benefit ... should a member of the firefighters' pension fund before completing the minimum age and minimum period of continuous service requirements but after having completed twelve years of full-time service for any reason cease to be employed as a full-time firefighter." The Code further provides that a member may begin receiving his or her pension "[u]pon reaching the date which would have been the member's retirement date had the member continued his or her full-time employment with the fire department." 53 P.S. § 39320.1(b).

3. Pursuant to the parties' Stipulation of Facts (Stipulation), no specific 12–year vesting provision appears in the City's pension ordinance or bylaws; however, a Memorandum of Understanding pertaining to the collective bargaining agreement (Agreement) between the City and the International Association of Fire Fighters, Local 299 (Union) provides, in relevant part, that "[e]ffective January 1, 1997, pension benefits of the bargaining unit shall

beck died on March 27, 2008, and, therefore, never received a pension payment.

On March 21, 2012, nearly four years after her husband died, Surviving Spouse filed an application for surviving spouse pension benefits with the City of Altoona Paid Fireman's Pension Fund (Pension Fund). Because it believed that nothing in Section 4320.1 of the Code implementing the ordinance and Agreement provided guidance as to whether a surviving spouse was entitled to benefits where the participant died after vesting but prior to the 20-year entitlement date,[4] the City filed a declaratory judgment action seeking a determination as to whether Surviving Spouse had the right to a surviving spouse pension under Section 4320 of the Code which provides for "payments to surviving spouses of members retired on pension or killed or who die in the service." 53 P.S. § 39320.

Before the trial court, Allen Wagner (Wagner), who served on the Pension Board (Board) from 1985 through December 2010, most recently as its secretary, testified that Dambeck "left the department in its good graces and vested his pension benefits" in 2005. (R.R. at 10a.) He said that when Dambeck died in 2008, he reviewed the Agreement and informed the Board that he believed Surviving Spouse should receive the same benefits Dambeck would have received if he had been receiving pension benefits when he died, since widows of vested members had long been recognized as recipients of bene-

fits. Wagner also said that around the time Dambeck died, he informed Surviving Spouse that he believed she should wait until her husband would have been eligible for pension benefits and apply for widow's benefits at that time. He said that the other members of the Board agreed with him so no one saw any need for action on the matter. Wagner further testified that he left the Board in 2010 so he had no part in any discussions or actions taken when Surviving Spouse actually applied for widow's benefits. He also agreed with the parties' Stipulation that the Agreement provides for a 12-year vesting principle, not the bylaws, but the bylaws have been incorporated into the Agreement by reference. He finally said that this is the first time he had encountered an instance where a member vested his benefits and passed away before beginning to receive them.

On cross-examination, Wagner testified that the 12-year vesting right was provided for in the Agreement, which previously required 20 years of service before a member's benefits vested. He further said that his discussion with the other Board members as to Surviving Spouse's situation and whether the Board believed she was entitled to surviving spouse benefits was "sort of [ ] informal," (R.R. at 27a), but that the Board agreed that she should be entitled to the benefits. Wagner believed that he was acting within his capacity as secretary of the Board in informing Surviving Spouse that she should wait and apply for

---

vest after twelve years of service." (Reproduced Record [R.R.] at 68a.)

**4.** The bylaws previously required that a member reach the age of 50 and have 20 years of service before he or she could receive benefits, but the requirement was removed through collective bargaining. However, before the age requirement was removed, a participant could retire at 20 years of service at which point the amount of his or her pension

would be fixed but the participant could not begin to receive pension benefits until he or she reached the age of 50 years. However, if the participant died after reaching 20 years of service and retiring but before reaching 50 years of age and being entitled to pension benefits, his or her surviving spouse would be entitled to receive pension benefits. (R.R. at 4a.)

benefits at what would have been her husband's 20–year anniversary with the Department which the Board believed was the appropriate time.

Based upon the testimony and evidence presented at trial and upon the Stipulation which the court incorporated into its opinion by reference, the trial court found that while no formal vote was ever taken, the members of the Board were in agreement with Wagner as to Surviving Spouse's eligibility to receive widow's benefits. Nonetheless, the trial court held that Surviving Spouse was not entitled to collect surviving spouse benefits because her husband was not retired and collecting a pension or did not die while he was employed by the Department as required by Section 4320 of the Code. The court based its decision, in part, on the Supreme Court of Pennsylvania's decision in *In re Appeal of Stanton,* 499 Pa. 151, 154, 452 A.2d 496, 497 (1982), in which the Court held that "a firefighter's widow's right to pension benefits is not derivative" of her husband's right to benefits, so the fact that Surviving Spouse's husband's right to pension benefits had vested had no bearing on her eligibility to collect surviving spouse benefits. While recognizing that one of the Supreme Court's intentions was to protect surviving widows, the trial court then went on to state:

> In conclusion, the Pennsylvania Supreme Court in *Stanton* held that a fire fighter's widow's rights to pension benefits is not derivative, and the deceased fire fighter's ineligibility for retirement benefits does not affect his widow's independent statutorily conferred right to benefits. [499 Pa. at 154,] 452 A.2d at 497.
>
> In *Stanton,* the fire fighter died after only four years' service, and was not yet

entitled to pension benefits in that he had not satisfied the service nor the age requirements of the pension plan. There is one important fact, however, in *Stanton* that distinguishes that case from the one before the court. On the date of his death, Mr. Stanton *was employed* by the City of Easton Fire Department. Therefore, his widow fell within the class of persons the legislature intended to protect, i.e., she was a widow of a member who "died in the service," interpreted by the court to mean a member who *dies while employed by a fire department* (emphasis added). [499 Pa. at 155,] 452 A.2d at 498. In our case, as of the date of his death, it is undisputed that Mr. Dambeck was *not* employed by the City of Altoona Fire Department.

(Trial Court 2/1/13 Opinion at 7) (emphasis in original.) This appeal followed.[5]

On appeal, Surviving Spouse contends that although her husband was not receiving pension benefits when he died, he was still "retired on pension" when he left his employment as a City firefighter. The issue then becomes whether "retired on pension" means that the decedent spouse must be receiving actual pension benefit payments or must only be entitled to benefits at a fixed, certain date.

The Code provides, in relevant part, that third-class cities shall establish a firemen's pension fund to which each member of a city's fire department must contribute to provide for members' pensions, as well as "payments to surviving spouses of members retired on pension or killed or who die in the service." 53 P.S. § 39320. Section 4322 of the Code provides that surviving spouses are to be paid the amount the member was receiving or would have been

receiving at the time of his or her death. 53 P.S. § 39322. A city's ordinance may provide for a limited vesting benefit, whereby a member may vest his benefits after 12 years of full-time service, and that member will begin receiving pension benefits when he reaches the date at which he would have retired had he continued full-time employment. 53 P.S. § 39320.1. As discussed, *supra*, the City provides for such a vesting right.

■ In interpreting the relevant provisions of the Code, we must also keep in mind that the object of statutory construction "is to ascertain and effectuate the intention of the General Assembly." *Maletta v. City of Bradford*, 881 A.2d 903, 904 (Pa.Cmwlth.2005) (citing Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a)). Additionally, pension statutes are to be liberally construed in favor of the pensioner. *Id.* "[P]rotection of the surviving spouse was one of the objectives intended to be accomplished under the amendments to the Code." *Stanton*, 499 Pa. at 153, 452 A.2d at 497.

■ In this case, whether Surviving Spouse's pension benefits were derivative or not and whether Dambeck was in service or not is irrelevant to determine whether Surviving Spouse is entitled to pension benefits. Dambeck was a member of the Pension Fund and there is no dispute that Surviving Spouse had a right to surviving spouse benefits if Dambeck was "retired on pension" when he died.

Dambeck had retired from the Department, was no longer making pension contributions, and although he had not begun to collect his pension at the time of his death, his application for pension benefits had been made and accepted, his right to those benefits was fixed and certain, the payments were guaranteed to start upon reaching the date which would have been his "retirement date," and he notified the fund that he desired to "collect his pension." 53 P.S. § 39320.1. Because the General Assembly used the term "retired on pension," 53 P.S. § 39320, rather than "retired and receiving a pension," all that was required for Dambeck to be "on pension" was that he had made application for a pension, it was approved by the Pension Fund, and he was entitled to collect that pension at a future date.

Accordingly, we reverse the order of the trial court and hold that Surviving Spouse is entitled to surviving spouse benefits as provided for in the Association's bylaws and their subsequent amendments.

### ORDER

AND NOW, this *3rd* day of *January*, 2014, the order of the Court of Common Pleas of Blair County, dated February 1, 2013, is reversed.