CITY OF ARNOLD, Pennsylvania, Appellee

v.

WAGE POLICY COMMITTEE OF the CITY OF ARNOLD POLICE DEPARTMENT, o/b/o Pamela Cimino, Appellants

No. 33 WAP 2016

Supreme Court of Pennsylvania.

ARGUED: April 5, 2017

DECIDED: October 18, 2017

Richardson Todd Eagen, Esq., Welby, Stoltenberg, Cimballa & Cook, LLC, Ronald Ryan Retsch, Esq., Lightman Welby & Stoltenberg, LLC, for Appellant.

John Edward Pallone, Esq., David Allen Regoli, Esq., for Appellee.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.

## OPINION

JUSTICE MUNDY

In this appeal by allowance, we consider, in the context of a grievance arbitration award, whether an arbitrator has subject matter jurisdiction to adjudicate a dispute between a union and a municipality arising out of a surviving spouse's pension benefit, where the benefit was afforded to the surviving spouse statutorily and incorporated into the parties' collective bargaining agreement (CBA). For the reasons set forth below, we conclude such a dispute is arbitrable under the Policemen and Firemen Collective Bargaining Act ("Act 111"), 43 P.S. §§ 217.1–217.10, because the surviving spouse's pension benefit was incorporated into the CBA. Accordingly, we

reverse the order of the Commonwealth Court.

The facts of this case are not disputed. Pamela Cimino's husband, Thomas J. Cimino, was a police officer for the City of Arnold, Pennsylvania (City) from July 1, 1990 until April 4, 2002. On April 4, 2002, Officer Cimino died off-duty of natural causes. At the time of his death, Officer Cimino had completed 11.77 years of service and his average monthly compensation for 2002 was $3,898.21.[1]

On May 7, 2002, the City Controller notified Mrs. Cimino in writing that she was entitled to a monthly death/survivor pension benefit of $1,949.11, which represented 50% of Officer Cimino's 2002 average monthly pay rate.[2] The City Controller confirmed this pension payment in a letter dated July 14, 2003. Pursuant to this calculation, the City issued Mrs. Cimino 142 consecutive monthly death benefit payments, from May 1, 2002 to February 1, 2014. However, in a 2014 compliance audit,

1. Because Officer Cimino had not served on the police force for at least 12 years, his pension had not vested at the time of his death. *See* Collective Bargaining Agreement, 1/1/99 (1999 CBA), at 23, Article XXIV—Vesting of Pension ("[e]ffective January 1, 1993 Police officers who have completed twelve (12) years of full-time service shall be entitled to vest his/her pension ...."); *see also* ARNOLD, PA., POLICE PENSION PLAN, ORDINANCE NO. 6 OF 1997 (1997 Ordinance) § 4.06 (stating the same 12–year pension vesting rule); 53 P.S. § 39302.1 (providing a "limited vested benefit" upon 12 years of service) (repealed and replaced by 11 Pa.C.S. § 14302.1, effective January 25, 2016).

2. This 50% death pension benefit was authorized by Section 4303(f) of the Third Class City Code, previously codified at 53 P.S. § 39303(f), and since recodified at 11 Pa.C.S. § 14303(f), without substantial change, as follows.

> A police officer who has less than 10 years of service and who dies or is totally disabled due to injuries or mental incapacities not in the line of duty and is unable to perform the duties of a police officer may be entitled to a pension of 25% of the police officer's annual compensation. For death or injuries received after 10 years of service, the compensation may be 50% of the police officer's annual compensation.

11 Pa.C.S. § 14303(f). Further, Section 5 of the City's Ordinance No. 3 of 1987 specifies the following 50% death pension benefit.

> If a Member who has completed more than ten (10) Years of Continuous Service with the Employer dies, whether or not in the line of duty, and regardless of the number of Years of Continuous Service with the Employer, his spouse or if no spouse survives or if a spouse survives and subsequently dies or remarries then his child or children under the age of eighteen (18), shall be entitled to receive a death benefit in the amount of fifty-percent (50%) of the Member's annual Compensation prior to his death or retirement whichever is applicable.

ARNOLD, PA., POLICE PENSION PLAN, ORDINANCE NO. 3 OF 1987 (1987 Ordinance) § 5.

The death pension benefits in the 1987 Ordinance, however, were amended by a 1997 ordinance to provide a lesser pre-retirement death benefit for officers who died while off-duty.

> (a) If the Participant dies, as a direct result of the performance of duties as an Employee of the Employer, a Death Benefit shall be paid monthly in an amount equal to fifty percent (50%) of the Average Monthly Compensation of the Participant as of the Date of Death.
>
> (b) If the Participant dies, while an Employee of the Employer but not as the direct result of the performance of duties as an Employee of the Employer, a Death Benefit shall be paid monthly in an amount, in the case of a Participant who has completed fewer than ten (10) Years of Service, equal to twenty-five percent (25%) of the amount which is equal to fifty percent (50%) of the Average Monthly Compensation of the Participant as of the Date of Death, and in the case of a Participant who has completed ten (10) Years of Service or more, equal to fifty percent (50%) of the amount which is equal to fifty percent (50%) of the Average Monthly Compensation of the Participant as of the Date of Death.

1997 Ordinance § 6.01.

the Commonwealth Auditor General's Office (Auditor General) determined that the City was incorrectly administering the death benefit. According to the Auditor General's compliance audit, the City had been paying Mrs. Cimino twice as much as it should have under its interpretation of Section 6.01(b) of the 1997 Ordinance. Based on the Auditor General's report, on February 17, 2014, the City notified Mrs. Cimino in writing that it had been incorrectly administering the surviving spouse death benefit to her. The City stated it had reinterpreted its police pension plan ordinance such that effective March 1, 2014, Mrs. Cimino would receive 50% of 50% of Officer Cimino's benefit, or $974.56 per month. Additionally, the City determined that it had overpaid Mrs. Cimino $138,386.10 in the past 142 payments, and beginning June 1, 2014, the Police Pension Board would recover the overpayment by deducting $10.00 from Mrs. Cimino's further monthly pension payments.

On March 5, 2014, the Wage Policy Committee of the City of Arnold Police Department (Union)[3] initiated a grievance on behalf of Mrs. Cimino to dispute the 50% reduction in her death benefit pension payments. The Union followed the grievance procedure contained in the CBA between the City and the Union. See CBA, 1/1/09 (2009 CBA), at 23, Art. XVIII (providing "[s]hould any dispute arise between the Municipality and the Policeman, the following grievance procedure shall be followed"); 1999 CBA, at 19, Art. XVIII (containing identical language). The Union submitted the grievance to the Chief of Police, who denied it. See 2009 CBA, at 23, Art. XVII § 1. On March 11, 2014, as the first step in the CBA's grievance process, the Union submitted the grievance to the Mayor, who denied it on March 19, 2014. See

id. at § 2–3. On March 21, 2014, the Union proceeded to step two by submitting the grievance to City Council, which denied it on March 31, 2014. See id. at § 4–5. The third step of the grievance process, a meeting between the parties and their representatives, did not resolve the dispute, and the Union chose to pursue grievance arbitration, as was its right under the CBA. See id. at § 6–7.

On February 13, 2015, the grievance arbitrator, Gregory Gleason, issued an opinion and award sustaining the Union's grievance and restoring Mrs. Cimino's death benefit to $1,949.11 per month. Relevant to this appeal, Arbitrator Gleason determined the dispute between Mrs. Cimino and the City over the amount of her monthly death benefit was arbitrable. Arbitrator Gleason reasoned that Article XVII of the CBA broadly subjects to arbitration "any dispute" between the parties. He explained that Article XVII of the 2009 CBA states "[a]ll pension benefits not in conflict with any sections of this Article and adopted by ordinance and in existence at the time of the signing of this Agreement are incorporated herein by reference into this agreement including but not limited to ... Ordinance No. 3 of 1987 ...." 2009 CBA, at 22–23, Art. XVII § 5. Therefore, because the parties agreed to submit any dispute to arbitration and expressly incorporated into the CBA all pension plans and benefits, including the survivor pension benefits provided by Ordinance No. 3 of 1987, Arbitrator Gleason concluded the dispute was arbitrable.

Arbitrator Gleason provided the following reasoning for sustaining the grievance and restoring Mrs. Cimino's survivor pension benefit.

**3.** The Union is the exclusive bargaining representative for all City police officers, excluding the Chief of Police and other management-level employees.

I conclude that the City's conduct [in] 2002 and 2003 was intended to provide the 50% benefit to [Mrs.] Cimino and the City at that time interpreted Ordinance 6 to provide that benefit. There was neither an error nor a mistake in 2002 nor 2003 nor in any subsequent inclusion of this interpretation in successive Act 2005[, 53 P.S. §§ 895.101–895.803,] AVRs [ ("actuarial valuation reports") ]. Regardless of the City's later reinterpretation, its conduct in 2002 and 2003 and in submitting AVRs with the 50% benefit included (which distinguishes this case from *Shippensburg* [*Police Ass'n v. Borough of Shippensburg*, 968 A.2d 246 (Pa. Cmwlth. 2009) ] ), created a term or condition of employment covered by the CBA and the City cannot now unilaterally alter that term or condition of employment. The grievance is sustained.

Opinion and Award of Arbitrator Gregory Gleason, 2/13/15, at 23.

Following the arbitration award, the City filed in the Westmoreland County Court of Common Pleas a petition to vacate the arbitration award. The trial court, in an opinion by President Judge Richard E. McCormick, Jr., considered, among other things, the City's argument that the arbitrator did not have subject matter jurisdiction to issue an award regarding Mrs. Cimino's death benefit. The trial court concluded that the arbitrator had jurisdiction to resolve the dispute. The court reasoned that Act 111 gives arbitrators the authority to resolve grievances between police personnel and their employers. Trial Ct. Op., 7/22/15, at 4 (citing *Pa. State Police v. Pa. State Troopers' Ass'n (Betancourt)*, 540 Pa. 66, 656 A.2d 83 (1995)). The trial court found there was a dispute concerning the interpretation of the CBA and the pension plan provisions based on the issues

raised by the Union during arbitration. Therefore, the court held that the arbitrator had jurisdiction to interpret the CBA and pension plan provisions to resolve the dispute between the Union, representing Mrs. Cimino, and the City.

The City appealed the trial court's order denying its motion to vacate the arbitration award to the Commonwealth Court, and a unanimous, three-judge panel of the Commonwealth Court reversed. The Commonwealth Court concluded that the arbitrator did not have subject matter jurisdiction to resolve the grievance between Mrs. Cimino, as the widow of a police officer, and the City. *City of Arnold v. Wage Policy Comm. of City of Arnold Police Dep't*, 138 A.3d 719, 726 (Pa. Cmwlth. 2016). The court reasoned that Mrs. Cimino's "right to a death/survivor benefit is not derivative of Decedent's rights under the CBA, but an independent right under the City's pension plan as implemented under the Third Class City Code and its Ordinances." *Id.* at 725 (citing *In re Appeal of Stanton*, 499 Pa. 151, 452 A.2d 496, 497–98 (1982); *City of Altoona Paid Firemen's Pension Fund Ass'n v. Dale–Dambeck*, 83 A.3d 279, 282 (Pa. Cmwlth. 2014) (en banc)). The Commonwealth Court explained that the dispute between Mrs. Cimino and the City was not covered under the CBA because Mrs. Cimino, unlike her husband, was not an employee of the City. *Id.* Moreover, the court reasoned the grievance contested the Pension Board's decision, which was subject to Local Agency Law, and not covered by Act 111 or the CBA. *Id.* (citing *Groman v. Officers' & Employees' Pension Bd. of City of Bethlehem*, 69 Pa.Cmwlth. 447, 451 A.2d 789, 790–91 (1982)). Therefore, the Commonwealth Court held the arbitrator did not have subject matter jurisdiction over the dispute.[4]

4. In a closing footnote, the Commonwealth Court suggested that Mrs. Cimino could pur-

■ We granted allocatur on the following·issue, which we rephrased for clarity.

Is a dispute between a union and a municipality arising out of a surviving spouse's pension benefit arbitrable under [Act 111], where the benefit was afforded to the surviving spouse of a police officer or firefighter statutorily, and incorporated into the parties['] collective bargaining agreement?

*City of Arnold ·v. Wage Policy Comm. of the City of Arnold Police Dep't*, —— Pa. ——, ——, 160 A.3d 764, 2016 WL 6269529, at *1 (2016). As this question arises in the context of review of an Act 111 grievance arbitration award,[5] our scope of review is that of narrow certiorari. Specifically, our review of a grievance arbitration award is limited to four areas: (1) the arbitrator's jurisdiction; (2) the regularity of the proceedings; (3) an excess of the arbitrator's power; and (4) the deprivation of a constitutional right. *Betancourt*, 656 A.2d at 89–90. The only question presented here is whether the arbitrator had subject matter ·jurisdiction to resolve the dispute over the interpretation and application of Mrs. Cimino's survivor benefit. *See Int'l Ass'n of Firefighters, Local 22*, 999 A.2d at 564 (2010).

■■ To decide whether an arbitrator has jurisdiction, a court must ·determine whether the law empowers an arbitrator to adjudicate the general class of controversies, to which the subject of the dispute belongs. *See id.* Pennsylvania's Constitution and statutory provisions provide the sources of an arbitrator's jurisdiction. *See*

*id.* (citation omitted). Article 3, Section 31 of the Pennsylvania ·Constitution grants the General Assembly the authority to "enact laws which provide that the findings of panels or commissions, selected and acting in accordance with law for the adjustment or settlement of grievances or disputes or for collective bargaining between policemen and firemen and·their public employers shall be binding on all parties ...." PA. CONST. art. III, § 31.

■ The General Assembly, pursuant to this constitutional authorization, enacted Act 111. Section 1 of Act 111 states "[p]olicemen or firemen ... have the right to bargain collectively ·with their public employers concerning the terms and conditions of their employment, including compensation, hours, working conditions, retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or ·disputes in accordance with the terms·of this act." 43 P.S. § 217.1. Further, Section 4 of Act 111 provides, in part, that disputes may be resolved by arbitration "[i]f in any case of a dispute between a public employer and its policemen or firemen employes the collective bargaining process reaches an impasse and stalemate ...." 43 P.S. § 217.4(a). In *International Association of Firefighters*, this Court analyzed the history and development of Act 111 and concluded "it is apparent that the General Assembly intended that the scope of collective bargaining set forth in Section 1 [of Act 111] be viewed broadly, to encompass any subject that is rationally related

---

sue a procedural due process challenge under the Local Agency Law to the Pension Board's decision to reduce the amount of her death pension benefit, because the Pension Board apparently did not provide her notice and a hearing before reducing her benefits, *City of Arnold*, 138 A.3d at 726 n.11.

**5.** "Grievance arbitration" exists to resolve a dispute over the interpretation of an existing CBA. This is distinct from "interest arbitration," which arises when the parties are unable to agree on the terms to be included in a CBA. *City of Phila. v. Int'l Ass'n of Firefighters, Local 22*, 606 Pa. 447, 999 A.2d 555, 558 n.2 (2010).

to the 'terms and conditions of employment,' including employee 'compensation, hours, working conditions, pensions, retirement and other benefits.'" *Int'l Ass'n of Firefighters*, 999 A.2d at 569 (citing 43 P.S. § 217.1; *Borough of Ellwood City v. PLRB*, 606 Pa. 356, 998 A.2d 589 (2010)).[6] Accordingly, an arbitrator has jurisdiction to adjudicate the class of disputes arising out of a CBA between a public employer and its firefighters or police employees, rationally related to the terms and conditions of their employment. *See Int'l Ass'n of Firefighters*, 999 A.2d at 564. An argument, such as the City raised in this case, that an arbitrator mediated a dispute that is not of this general type presents a question of jurisdiction. *See id.* As explained above, the Commonwealth Court concluded the arbitrator did not have jurisdiction because the Act 111 grievance arbitration process was invoked by a third-party, Mrs. Cimino, who was not an employee of the City. *City of Arnold*, 138 A.3d at 725.

Recognizing the scope of an arbitrator's jurisdiction over grievance arbitration under Act 111, we now set forth the relevant provisions of the City's pension plan and the CBA that apply to this dispute. Preliminarily, we note that Section 4303(f) of the Third Class City Code, 11 Pa.C.S. §§ 10101–14702, authorizes the payment of a pension benefit to a police officer who dies or becomes totally disabled while not in the line of duty. 11 Pa.C.S. § 14303(f) (effective January 25, 2016, previously codified at 53 P.S. § 39303(f)). The amount of the pension benefit "[f]or death or injuries received after 10 years of service, [ ] may be 50% of the police officer's annual compensation." *Id.* Pursuant to the Third Class City Code, the City implemented the following pension death benefit in Section 5 of Ordinance No. 3 of 1987, as follows:

> If a Member who has completed more than ten (10) Years of Continuous Service with the Employer dies, whether or not in the line of duty, and regardless of the number of Years of Continuous Service with the Employer, his spouse or if no spouse survives or if a spouse survives and subsequently dies or remarries then his child or children under the age of eighteen (18), shall be entitled to receive a death benefit in the amount of fifty-percent (50%) of the Member's annual Compensation prior to his death or retirement whichever is applicable.

1987 Ordinance § 5. In Ordinance No. 6 of 1997, the City amended the pension death benefit to decrease the amount of the benefit for officers who died while off-duty, as follows:

> If a Participant dies before becoming entitled to a Normal Retirement Benefit, a Death Benefit shall be paid as follows:
>
> (a) If the Participant dies, as a direct result of the performance of duties as an Employee of the Employer, a Death Benefit shall be paid monthly in an amount equal to fifty percent (50%) of the Average Monthly Compensation of the Participant as of the Date of Death.
>
> (b) If the Participant dies, while an Employee of the Employer but not as the direct result of the performance of duties as an Employee of the Employer, a Death Benefit shall be paid monthly in an amount, in the case of a Participant who has completed fewer than ten (10) Years of Service, equal to twenty-

---

**6.** This Court also explained that the right to bargain under Section 1 of Act 111 did not extend to "matters of managerial decision-making," such as "standards of service, over- all budget, use of technology, organizational structure, and the selection and direction of personnel." *Int'l Ass'n of Firefighters*, 999 A.2d at 569–70 (citations omitted).

five percent (25%) of the amount which is equal to fifty percent (50%) of the Average Monthly Compensation of the Participant as of the Date of Death, and in the case of a Participant who has completed ten (10) Years of Service or more, equal to fifty percent (50%) of the amount which is equal to fifty percent (50%) of the Average Monthly Compensation of the Participant as of the Date of Death.

1997 Ordinance § 6.01.

The 2009 CBA between the City and its police officers provided "[i]t is also understood that all existing conditions of work, past practice[s] and benefits not in conflict with this agreement, including all pension rights established previously by agreement and/or implemented by ordinance shall continue in effect." 2009 CBA, at 2, Art. I. The 2009 CBA also specifically incorporated the pension ordinances discussed above as follows.

All pension benefits not in conflict with any sections of this Article and adopted by ordinance and in existence at the time of the signing of this Agreement are incorporated herein by reference into this Agreement including but not limited to ... Ordinance No. 3 of 1987, Enacted October 1, 1987. However, the aforesaid provisions contained in this section shall be amended by the Municipality to provide that the widow/widower of a Police Officer shall receive one hundred percent (100%) of the pension which a Police Officer would have been entitled to receive or was receiving at the time of his death.

Id. at 22–23, Art. XVII, § 5. The CBA also contained a grievance procedure, which applied to "any dispute" between the municipality and a police officer and ultimately provided that if an officer was not satisfied with the result of the grievance process,

the case may be submitted for binding arbitration. Id, at 23–24, Art. XVIII, § 7–8.

■ With the above provisions in mind, we turn to the arguments of the parties. The Union contends that the arbitrator had jurisdiction and the dispute over the reduction of Mrs. Cimino's survival benefit was arbitrable under Act 111 because it was incorporated into the CBA. Union's Brief at 25–26. The Union asserts that the Commonwealth Court's narrow view of the survival benefit as the widow's benefit alone bypassed Act 111, particularly where the benefit was incorporated into the CBA. Id. Section 1 of Act 111, the Union notes, provides police officers the right to engage in collective bargaining and grievance arbitration regarding their statutorily-created pension benefits before one party may unilaterally alter the benefits. Id. at 28 (citing 43 P.S. § 217.1; City of Erie v. Pa. Labor Relations Bd., 612 Pa. 661, 32 A.3d 625, 637 (2011)). Further, the Act 111 right to collectively bargain applies regardless of whether a CBA expressly mentions pension benefits, whether the benefits have been incorporated by reference, or even whether the CBA is silent on a mandatory subject of bargaining. Id. (citing City of Erie, 32 A.3d at 637). The Union indicates this Court has held an employer's attempt to unilaterally alter a mandatory subject of bargaining, such as pension benefits, even through an ordinance, is an unfair labor practice. Id. at 28–29 (citing City of Erie, 32 A.3d at 638).

The Union specifically disputes the Commonwealth Court's reliance on International Association of Firefighters to support its holding that a surviving spouse's pension benefit is separate and distinct from the deceased police officer's pension. Id. at 29. The Union argues that International Association of Firefighters actually undermines the Commonwealth

Court's reasoning because it explained that under Act 111, employees have a right to collectively bargain over the terms and conditions of employment, including retirement, pensions, and other benefits. *Id.* at 30 (citing *Int'l Ass'n of Firefighters*, 999 A.2d at 566). According to the Union, this Act 111 language indicates disputes over pension benefits fall under an arbitrator's jurisdiction. *Id.*

The Union also refutes the Commonwealth Court's citation of *Stanton* and *Altoona* to support its conclusion that the survivor's pension benefits are not derivative of the officer's pension. *Id.* First, in *Stanton*, this Court examined the issue of whether "any pension benefit entitlement can accrue to the widow of a firefighter who was not eligible for a pension at the time of his death, where the death was not job-related" under the Third Class City Code. *Stanton*, 452 A.2d at 496. This Court explained that the Third Class City Code entitled the widow to payments equivalent to the amount payable to the firefighter if he or she was retired at the time of death. *Id.* at 497. Because the Third Class City Code provided a firefighter's widow independent rights to benefits, this Court held that the "widow's right to pension benefits is not derivative, and a deceased firefighter's ineligibility for retirement benefits does not affect his widow's independent, statutorily conferred right to benefits." *Id.* The Union contends *Stanton* broadly interpreted the Third Class City Code to provide a widow with her deceased spouse's retirement benefits, even though her spouse was not eligible for benefits when he died. Union's Brief at 37. Further, the Union distinguishes *Stanton* because it did not involve a benefit bargained over and included in the CBA. *Id.* at 38.

Similarly, the Union claims *Altoona* does not support the Commonwealth Court's position that the benefits were not deriva-

tive. Union's Brief at 39. *Altoona* also involved an interpretation of the pension benefits afforded to a surviving spouse under the Third Class City Code. In *Altoona*, the issue was whether the "[s]urviving [s]pouse's husband[ ] died while 'on pension' within the meaning of Section 4320 of the Third Class City Code." *Altoona*, 83 A.3d at 280. In *Altoona*, the surviving spouse of a firefighter filed an application for benefits with the city's pension fund seeking payment of her retired husband's vested pension benefits that he had not begun receiving before his death. *Id.* at 280–81. The trial court distinguished *Stanton* on the basis that the deceased firefighter was not employed by the fire department at the time of his death. *Id.* at 282. In deciding the case, the Commonwealth Court stated "whether [s]urviving [s]pouse's pension benefits were derivative or not and whether [the decedent] was in service or not is irrelevant to determine whether [s]urviving [s]pouse is entitled to pension benefits." *Id.* at 283. Instead, the Commonwealth Court concluded that because the deceased firefighter made an application for a pension, which the pension fund approved, and he would be entitled to receive that vested pension benefit on his calculated retirement date, his surviving spouse was entitled to benefits as provided in the pension fund association's bylaws. *Id.* The Union argues *Altoona* does not apply to this case because *Altoona* held the issue of whether the surviving spouse's pension benefits were derivative of her deceased spouse was not pertinent to determining the spouse's entitlement to benefits. Union's Brief at 39.

In contrast to *Stanton* and *Altoona*, the Union asserts that Mrs. Cimino's surviving spouse pension benefit is directly reliant upon the officer's eligibility for the benefit as its calculation is based on the officer's years of service and nature of disability or death. *Id.* at 39. Further, the benefit is

both a survivor benefit and a disability benefit payable to a totally disabled officer during the remainder of his life and transferrable to the officer's spouse or children following the disabled officer's death. *Id.* at 39–41 (citing 53 P.S. § 39303 (repealed and replaced by 11 Pa.C.S. § 14303); 1987 Ordinance, Art. VI, §§ 5.01(b), 6.01(b) (implementing the benefit in 53 P.S. § 39303 in separate sections, with a lower amount to a deceased officer than a disabled officer)). Based on the nature of the benefit, the Union asserts it has the right, under Act 111, to collectively bargain and pursue grievance arbitration to enforce the payment of the pension benefit to its disabled or deceased officers. *Id.* at 41.

The Union analogizes this situation to one faced by a disciplined police officer. *Id.* at 42. The Union states that a disciplined officer may always challenge the disciplinary action pursuant to Local Agency Law, 2 Pa.C.S. § 553. However, a CBA may also provide for neutral arbitration of disciplinary matters under Act 111, which gives the officer an "election of remedies," under which the officer can bring a local agency appeal or a grievance. *Id.* (citing *Upper Gwynedd Twp. v. Upper Gwynedd Twp. Police Ass'n*, 777 A.2d 1187, 1191 (Pa. Cmwlth. 2001)). The Union explains that once an officer elects a remedy, that officer waives the alternative remedy. *Id.* at 42–43. The Union contends that the same approach should apply here: Mrs. Cimino had the option to contest the reduction of her survivor pension benefit, which was incorporated into the CBA, through a local agency appeal or through Act 111 grievance arbitration. *Id.* at 43.

Lastly, the Union refutes the Commonwealth Court's holding that the dispute in this case was between Mrs. Cimino and the Pension Board, not Mrs. Cimino and the City. The Union notes that Section 9 of Act 111 provides "[t]he provisions of this act shall be applicable to every political subdivision of this Commonwealth" regardless of whether the political subdivision has adopted a home rule charter. 43 P.S. § 217.9. According to the Union, Section 9 reflects the General Assembly's intent to prevent municipalities from impairing collective bargaining rights. Union's Brief at 47. Moreover, the Union argues the Pension Board is not a separate entity and its decisions regarding pension benefits are decisions of the City Council because the board is supervised by the council under the Third Class City Code. *Id.* (citing 11 Pa.C.S. § 14301(b)(4) (stating "[t]he [police pension] fund shall be under the direction and control of council but may be committed to the custody and management of an officer of the city . . ."). The Union emphasizes that the pension calculation adjustment was sent by the City's solicitor on behalf of the City on the City's letterhead. *Id.* at 48. The Pension Board did not send any corresponding notice to Mrs. Cimino. *Id.* Accordingly, the Union concludes that the City is intertwined with the Pension Board's decision making, and the two entities are not independent and distinct bodies. *Id.* As this was actually a dispute between the City and Mrs. Cimino over the reduction of pension benefits in the CBA, the Union asserts the arbitrator had jurisdiction over the grievance in this matter, and therefore this Court should reverse the Commonwealth Court's decision to the contrary. *Id.* at 49.

In response, the City offers two reasons the Commonwealth Court correctly concluded the arbitrator did not have subject matter jurisdiction over this dispute. First, the City argues that a surviving spouse's right to a survivor pension benefit is not derivative of the decedent-employee's rights under the CBA. City's Brief at 10. Relying on the language of Section 1 of Act 111, which this Court in *International Association of Firefighters*, 999 A.2d at

566, interpreted as "the General Assembly limit[ing] the right of collective bargaining to only those decisions that a public entity makes as an employer of its firefighters and police[,]" the City asserts the scope of Act 111 is limited to employee-employer disputes. *Id.* at 11. Act 111, under the City's interpretation, "does not extend its scope to include the surviving spouses of the employees." *Id.* Moreover, the City contends that the survivor benefits are not "terms and conditions of employment" subject to collective bargaining; instead, they are conferred by the Third Class City Code on Mrs. Cimino as a surviving spouse. *Id.*

Second, the City argues Mrs. Cimino does not have standing to bring an Act 111 grievance because her right to survivor benefits is not derivative of her spouse's "employment benefits" under the CBA. *Id.* Instead, the Third Class City Code confers the right to survivor benefits on the widow of a deceased police officer. The City quotes *Stanton* for the proposition that the surviving spouse's right to benefits "is not derivative, and a [police officer's] ineligibility for retirement benefits does not affect his widow's independent, statutorily conferred right to benefits." *Id.* at 12 (quoting *Stanton*, 452 A.2d at 497). Based on this, the City concludes that the right to survivor benefits is an independent, statutorily-created right. *Id.* Likewise, the City asserts that a political subdivision cannot collectively bargain over survivor benefits because the Third Class City Code mandates those benefits. *Id.* at 13. In support of this position, the City notes that the Union did not collectively bargain for the survivor benefits on behalf of Mrs. Cimino, and Mrs. Cimino is not a party to the CBA.

The City, however, explains that Mrs. Cimino has a remedy in Local Agency Law because the City's Pension Board made the decision to reduce Mrs. Cimino's survivor benefit. *Id.* at 15. As the Pension Board is a government agency, not a political subdivision, Mrs. Cimino must seek redress under Local Agency Law. *Id.* (citing *Groman*, 451 A.2d at 790–91 ("[t]here can be no doubt that the Board is a local agency within the meaning of that term as defined in 2 Pa.C.S. § 101")). The City argues that Mrs. Cimino's failure to pursue a remedy under Local Agency Law should result in a dismissal of this case for lack of subject matter jurisdiction. *Id.* at 17.

We conclude that the arbitrator had subject matter jurisdiction to adjudicate this dispute between the Union and the City because the survivor benefit afforded to Mrs. Cimino, as a surviving spouse of a deceased police officer, was incorporated into the parties' CBA. This conclusion is based on the express language of Act 111, the Third Class City Code, the City's pension ordinances, and the parties' CBA. First, Section 1 of Act 111 provides police officers with the right to collectively bargain over the "terms and conditions of their employment, including ... retirement, pensions and other benefits, and shall have the right to an adjustment or settlement of their grievances or disputes in accordance with the terms of this act." 43 P.S. § 217.1. As previously stated, this Court has decided that the scope of Section 1's collective bargaining mandate is broad, including any matter "rationally related" to the "terms and conditions of employment," such as pension benefits. *Int'l Ass'n of Firefighters*, 999 A.2d at 569.

The survivor benefit in dispute in this case was authorized by the Third Class City Code. *See* 53 P.S. § 39303(f) (repealed and recodified at 11 Pa.C.S. § 14303(f), effective January 25, 2016). The City's Ordinance No. 3 of 1987 provided for a survivor benefit for a deceased police officer's

spouse or children, the amount of which the City later amended in Ordinance No. 6 of 1997. As the result of the parties' collective bargaining, all pension benefits adopted by ordinance were incorporated into the CBA, including the 1987 Ordinance, and by extension, the 1997 Ordinance. *See* 2009 CBA, at 22–23, Art. XVII, § 5. Additionally, the parties agreed that the widow of a police officer would receive 100% of the police officer's pension that the officer was entitled to receive, or was receiving, at the time of his death. *Id.* Therefore, the City and the Union collectively bargained for a police officer's pension benefits to include a survivor benefit payable upon the officer's death to the officer's widow or children.

Regarding disputes over pension benefits provided by Act 111, Section 4 of Act 111 provides that in a dispute between a public employer and a police officer employee, if the collective bargaining process results in an impasse, either party may request arbitration to resolve the dispute. 43 P.S. § 217.4(a). Similarly, the parties' CBA sets forth a three-step grievance process to resolve "any dispute" between the City and its police officers, which, if unsuccessful, is followed by the right to pursue binding grievance arbitration. 2009 CBA, at 22–24, Art. XVII §§ 1–8. The dispute in this case was over the amount of a surviving spouse's pension benefit, which was part of a police officer's bargained-for pension benefits under the parties' CBA, and therefore the arbitrator had subject matter jurisdiction to resolve the dispute.

The Commonwealth Court concluded that Mrs. Cimino's "right to a death/survivor benefit is not derivative of Decedent's rights under the CBA, but an independent right under the City's pension plan as implemented under the Third Class City Code and its Ordinances." *City of Arnold*, 138 A.3d at 725. The court did

not explain how the "derivative" nature of the survivor benefit was dispositive of the arbitrator's subject matter jurisdiction. *Id.* Instead, the Commonwealth Court reasoned that the determinative factor was that the case did not involve a dispute between the City and its employee that was subject to the CBA. *Id.* The Commonwealth Court's analysis did not account for the fact that the survivor benefit was incorporated into the CBA. This is a significant omission because, as discussed above, the pension benefit was a specific term or condition of employment arising from Officer Cimino's employment as a City police officer, the benefit was incorporated into the parties' CBA, and the parties agreed to submit any disputes arising under the CBA to mandatory grievance arbitration. Further, as a police officer necessarily must be deceased for the officer's surviving spouse or children to receive a survivor pension benefit, that survivor is the only party remaining to dispute the City's administration of that benefit.

In support of its conclusion that Mrs. Cimino's right to the survivor benefit was not derivative of the rights provided for by her deceased husband's pension plan under the CBA, the Commonwealth Court cited to *Stanton* and *Altoona*, without discussing either case. *Id.* Both cases are distinguishable from this case because neither involved Act 111 arbitration or the incorporation of the Third Class City Code's pension benefits into the parties' CBA. First, in *Stanton*, this Court examined the issue of whether "any pension benefit entitlement can accrue to the widow of a firefighter who was not eligible for a pension at the time of his death, where the death was not job-related" under the Third Class City Code. *Stanton*, 452 A.2d at 496. This Court explained that the Third Class City Code entitled the widow to payments equivalent to the amount payable to the firefighter if he or she was

retired at the time of death. *Id.* at 497. Because the Third Class City Code provided a firefighter's widow independent rights to benefits, this Court held that the "widow's right to pension benefits is not derivative, and a deceased firefighter's ineligibility for retirement benefits does not affect his widow's independent, statutorily conferred right to benefits." *Id.* The *Stanton* Court resolved solely the interpretation of a provision of the Third Class City Code. The pension benefit in that case apparently was not incorporated into the parties' collective bargaining agreement, and the *Stanton* Court did not discuss whether disputes involving the widow's benefits were arbitrable under Act 111. Given these important distinctions, *Stanton* is not determinative of the issue in this case.

Second, *Altoona* also involved an interpretation of the pension benefits afforded to a surviving spouse under the Third Class City Code. In *Altoona,* the issue was whether the "[s]urviving [s]pouse's husband[ ] died while 'on pension' within the meaning of Section 4320 of the Third Class City Code." *Altoona,* 83 A.3d at 280. In *Altoona,* the surviving spouse of a firefighter filed an application for benefits with the city's pension fund seeking payment of her retired husband's vested pension benefits that he had not begun receiving before his death. *Id.* at 280–81. The trial court distinguished *Stanton* on the basis that the deceased firefighter was not employed by the fire department at the time of his death. *Id.* at 282. In deciding the case, the Commonwealth Court stated "whether [s]urviving [s]pouse's pension benefits were derivative or not and whether [the decedent] was in service or not is irrelevant to determine whether [s]urviving [s]pouse is entitled to pension benefits." *Id.* at 283. Instead, the Commonwealth Court concluded that because the deceased firefighter made an application for a pension, which the pension fund ap-

proved, and he would be entitled to receive that vested pension benefit on his calculated retirement date, his surviving spouse was entitled to benefits as provided in the pension fund association's bylaws. *Id. Altoona* does not support the Commonwealth Court's conclusion that Mrs. Cimino's pension benefits were not derivative because the *Altoona* Court did not rely on *Stanton*'s derivative reasoning. *Altoona* is further distinguishable from this case because it was resolved solely under the Third Class City Code and did not involve the jurisdiction of an arbitrator to resolve a dispute arising under Act 111 and the parties' CBA.

Additionally, the Commonwealth Court in this case concluded that the arbitrator did not have subject matter jurisdiction over this dispute because it involved the decision of the Pension Board, a local agency. *City of Arnold*, 138 A.3d at 725–26. The Commonwealth Court apparently concluded that Mrs. Cimino's exclusive remedy was to challenge the decision under Local Agency Law, 2 Pa.C.S. §§ 551–555, 751–754. *Id.* at 725, 726 n.11 (citing *Groman*, 451 A.2d at 790–91 (holding that a retiree-clerk challenging a pension board's decision had an exclusive statutory remedy under Local Agency Law)). However, the Commonwealth Court did not consider the circumstances of this case, in which the pension benefits were incorporated into the CBA and both Act 111 and the CBA provide that any disputes may be resolved through arbitration. *See* 2009 CBA, at 22–24, Art. XVII §§ 1–8; 43 P.S. § 217.4(a). The Commonwealth Court also did not acknowledge that the Commonwealth and the City were involved in the police pension board's decision to reduce the amount of Mrs. Cimino's survivor benefit. The Commonwealth's Auditor General concluded the City was overpaying Mrs. Cimino's survivor benefit, and the City's solicitor

notified Mrs. Cimino of the police pension board's decision to reduce the monthly survivor benefit payment. The survivor benefit was a term or condition of Officer Cimino's employment and it was incorporated into the parties' CBA. Therefore, Mrs. Cimino had the right under Act 111 and the CBA to pursue grievance arbitration to resolve the dispute over her deceased husband's bargained-for pension benefits.

In conclusion, we hold that the arbitrator had subject matter jurisdiction under Act 111 and the CBA to adjudicate this dispute because the surviving spouse's pension benefit was incorporated into the CBA. Thus, for all the above reasons, we reverse the order of the Commonwealth Court.

Jurisdiction relinquished.

Justices Baer, Todd, Donohue, Dougherty and Wecht join the opinion.

Chief Justice Saylor files a concurring opinion.

CHIEF JUSTICE SAYLOR, concurring

I fully support the portions of the majority's analysis centered on the incorporation of pension benefits into the collective bargaining agreement. I am also in full agreement with the majority that arbitral jurisdiction does not turn on whether a claim is derived from a statute, as that holding is consistent with the United States Supreme Court's directive that a statutory right is arbitrable, as long as the provisions are clearly incorporated into the CBA. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 258, 129 S.Ct. 1456, 1465, 173 L.Ed.2d 398 (2009). I am uncomfortable, however, with the majority's transposition of the specific terms of Act 111 explicitly pertaining to interest arbitration to the grievance arbitration process. *See* Majority Opinion, at 755 (likening the statute's prescription for interest arbitration to the resolution of grievances).

I believe that the extension of Act 111 and its accouterments to grievance arbitration is a product of a non-textual construction of the statute developed in the case law. *See, e.g., Betancourt*, 540 Pa. at 76–78, 656 A.2d at 88–89.[1] Along these lines, I am circumspect about the majority's assertion that "*both* Act 111 and the CBA provide that any disputes may be resolved through arbitration," Majority Opinion, at 756 (emphasis added), since Act 111 itself says nothing about grievance arbitration.

Left to my own devices, I would suggest that the present analysis would be clearer

---

1. Indeed, I have previously questioned such a formulation. *See PSP v. PLRB*, 570 Pa. 595, 606 n.6, 810 A.2d 1240, 1247 n.6 (2002). While I certainly recognize the line of cases that have endorsed a degree of overlap between grievance arbitration and Act 111—and do not question their precedential effect—I believe excessive reliance on that statute in the context of a *contractually* created grievance arbitration proceeding can be confusing. In my view, this Court's decision in *Chirico v. Bd. of Sup'rs for Newton Twp.*, 504 Pa. 71, 470 A.2d 470 (1983), which *Betancourt* relied upon and, as best I can tell, was the first instance of grievance arbitration being examined through the lens of Act 111, is instructive in this respect. There, even as this Court con-

cluded that a dispute pertaining to the interpretation of an interest arbitration award fell "within the ambit of grievance arbitration" and was "properly handled within the framework of ... Act 111," *id.* at 78, 470 A.2d at 474, it foreshadowed the potential difficulty implicit in its holding:

> Act 111 does not set forth the specific mechanism by which grievance, as compared with interest, disputes are to be arbitrated. We acknowledge it is clearly inadequate to recognize a right 'to a settlement of grievances or disputes', while failing to provide any method for the implementation of those rights.

*Id.* at 78–79, 470 A.2d at 474.

and more consistent with general arbitral principles if it centered more squarely on the collective bargaining agreement, which should be taken as defining the scope of the arbitrator's jurisdiction (obviously subject to legal limitations). *Cf. Port Auth. of Allegheny Cnty. v. Amalgamated Transit Union, Div. 85*, 492 Pa. 494, 496–97, 424 A.2d 1299, 1300 (1981) (noting, in a case arising under the Arbitration Act of 1927, that "jurisdiction [is] defined by the parties' collective bargaining agreement").[2] Notably, this approach is consistent with the broader understanding of the jurisdictional assessment, which, as the majority recognizes, turns on whether the decision-maker in the adjudicatory process—whether it be an arbitrator or a court—acted in the general class of controversies that the law empowers it to consider. Where, as here, the parties include an arbitration clause in a CBA, it is that contract which authorizes the arbitrator to settle the dispute and, thus, the most rational source from which to delineate a grievance arbitrator's jurisdiction is that agreement.

Finally, I have a concern that the majority's emphasis on Act 111 may be construed to limit arbitrators' jurisdiction to terms and conditions of employment, even where a collective bargaining agreement's substantive terms and dispute resolution procedures may contemplate a broader range of subjects. *See, e.g.,* Majority Opinion, at 755–56 (emphasizing, as part of the dispositive analysis, that "the pension benefit was a specific term or condition of employment"). I do not regard this potential difficulty as merely conjectural, since there are a number of issues that could conceivably be encompassed within a collective bargaining agreement, but do not meet the definitional requirements for "terms and conditions of employment," as set forth by courts. *See, e.g. S. Park Twp. Police Ass'n v. Labor Relations Bd.*, 789 A.2d 874, 879 (Pa. Cmwlth. 2002) (holding that certain specific reporting requirements for officers are not terms and conditions of employment); *Rose of Sharon Lodge No. 3 v. Pennsylvania Labor Relations Bd.*, 729 A.2d 1278, 1282 (Pa. Cmwlth. 1999) (holding that minimum requirements for promotion are not terms and conditions of employment); *Int'l Ass'n of Fire Fighters, Local 669 v. City of Scranton*, 59 Pa.Cmwlth. 235, 240, 429 A.2d 779, 782 (1981) (holding that the num-

---

**2.** Applying contract-based principles of arbitration would also serve to address the City's arguments concerning standing, to which the majority alludes. *See* Majority Opinion, at 753–54. Although ordinarily, only parties to a contract may avail themselves of its benefits, where an agreement confers benefits on a third party, that party may enforce it under a third-party beneficiary theory. Notably, when a party relies on this doctrine to seek enforcement of a provision that implicates an arbitration clause, the dispute must be submitted for arbitration, in accordance with the terms of the contract. *See Johnson v. Pennsylvania Nat. Ins. Companies*, 527 Pa. 504, 509, 594 A.2d 296, 299 (1991). Indeed, applying that precept in the context of a labor agreement, this Court has held that a claim involving an alleged third-party beneficiary to a CBA with an arbitral clause must be submitted for grievance arbitration by the union. *See Falsetti v.* *Local Union No. 2026, United Mine Workers of Am.*, 400 Pa. 145, 167–68, 161 A.2d 882, 892–93 (1960); *accord Ziccardi v. Commonwealth*, 500 Pa. 326, 330, 456 A.2d 979, 981 (1982). Similarly, several federal appellate courts have also held that, by agreeing to a CBA that grants benefits on individuals who are not members of the collective bargaining unit, an employer assumes a contractual obligation relative to those third parties and, thus, the union has standing to bring a claim on their behalf. *See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus v. Cookson Am., Inc.*, 710 F.3d 470, 474–75 (2d Cir. 2013); *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am.*, 440 F.3d 809, 817 (6th Cir. 2006); *Int'l Ass'n of Machinists & Aerospace Workers Local Lodge 2121 v. Goodrich Corp.*, 410 F.3d 204, 212 (5th Cir. 2005); *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 540–42 (7th Cir. 1997).

ber of firefighters that a city must employ are not terms and conditions of employment). Nevertheless, because I agree with the majority that the relevant benefits here *are* rationally related to terms and conditions, the effect of that limitation need not be considered any further in this case. I merely note that an analysis more closely centered on the collective bargaining agreement would avoid this problematic implication.